**Deborah FIDLER, Plaintiff,**

v.

**EASTMAN KODAK COMPANY,
Defendant.**

**Civ. A. No. 81–2784–N.**

United States District Court,
D. Massachusetts.

Dec. 17, 1982.

---

Gary D. Buseck, Charles M. Crowley, Jr., Parker, Coulter, Daley & White, Boston, Mass., for plaintiff.

John C. Wyman, Johanna Smith, Roche, Carens & DeGiacomo, Boston, Mass., for defendant.

DAVID S. NELSON, District Judge.

This cause of action was originally commenced in Middlesex Superior Court and subsequently removed to this Court on November 2, 1981. The plaintiff, Deborah Fid-

ler, is a citizen of Massachusetts. The defendant, Eastman Kodak, is a corporation duly organized under the laws of New York having its principal place of business in New York. Jurisdiction is predicated upon diversity of citizenship. 28 U.S.C. § 1332. Mrs. Fidler seeks $500,000.00 plus costs, interest and attorney's fees for injuries alleged to have been sustained by her as a proximate result of the defendant's negligence and breach of warranty.

The defendant categorically denies all of the plaintiff's averments, and has moved for summary judgment on the grounds that the claims are barred by the statute of limitations. The defendant has submitted memoranda of law along with other supportive documents. The plaintiff has responded in kind by filing memoranda and legal documents in opposition to the motion for summary judgment. A hearing on the motion was held on September 16, 1982 and the matter was taken under advisement.

After careful scrutiny of all legal arguments and relevant documents, I am obliged to allow the defendant's motion. There is no genuine issue of material fact as to the running of the statute of limitations, and the defendant is entitled to a judgment as a matter of law. *See* Fed.R. Civ.Proc. 56(c). *See also* 6 Pt. 2 Moore's Federal Practice ¶ 56.17[58], at 56–1058 to 1059 (2d ed. 1982) (statute of limitation defense appropriate for summary judgment); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 692–92 (8th Cir.1981) (summary judgment on statute of limitations grounds affirmed on basis of plaintiff's deposition testimony and other material); *Dalkon Shield IUD Products Liability Litigation,* 503 F.Supp. 194, 198 (N.D.Cal.1980) (summary judgment on statute of limitations grounds entered against plaintiff who testified at deposition that her IUD had perforated her uterus and caused the injuries for which she sought compensation); *Morris v. Stifel Nicolaus & Co.,* 600 F.2d 139 (8th Cir.1979); *Turner v. Lundquist,* 377 F.2d 44 (9th Cir.1967).

The historical events which culminated in the filing of this dispute merit review. In

May of 1973, Mrs. Deborah Fidler, injured her back while lifting a patient at a nursing home. On October 15, 1973, she was admitted to St. Elizabeth's Hospital suffering from back and leg pain. The plaintiff acknowledged that her leg and hip pain began in 1971–1972 Fidler Dep. Tr. 28–29. A myelogram was performed on October 16, 1973, to determine the source of Mrs. Fidler's back problem. A contrast medium described as Pantopaque was injected into her spine to perform the myelogram. A month later, Mrs. Fidler experienced pains shooting up her back and shoulders and pain in her arms and fingers. Fidler Dep. Tr. 29, 73. A second myelogram (March 18, 1975) produced a "bad headache." Fidler Dep. Tr. 65–67. During June of 1976, Mrs. Fidler testified that she experienced facial and head pain. Fidler Dep. Tr. 32, 67–68. Her present head pain began with the facial pain in June of 1976. Fidler Dep. Tr. 76–79. On September 19, 1977, a final myelogram was performed on the plaintiff. The plaintiff thereafter experienced severe back and head pain. Fidler Dep. Tr. 69–70. A year and a half ago, Mrs. Fidler began experiencing eye pains. Fidler Dep. Tr. 32.

The deposition of the plaintiff indisputably reveals when she was first informed of the potential causal relationship between her pain and Pantopaque contrast medium. Mrs. Fidler clearly stated that Dr. Butler informed her of his discovering a residual of Pantopaque contrast medium left in her spine, which was causing inflammation. Dr. Butler then expressed his belief that the Pantopaque was the cause of all the plaintiff's problems. Mrs. Fidler was positive that the conversation between Dr. Butler and her occurred on the same day she had an arteriogram (September 7, 1978). *See* Fidler Dep. Tr. 49–53.

The gravamen of the plaintiff's complaint is that Eastman Kodak Company has been negligent and is in breach of warranty. It produces a radiopaque contrast medium; yet, it failed to give adequate, effective and continuing warnings of the dangers involved in the use of the chemical. Eastman Kodak allegedly failed to provide proper instructions on the use of the contrast medi-

um. As a direct and proximate result of the defendant's negligence and breach of warranty, the plaintiff alleges that she has suffered injury. Though the plaintiff concedes that Eastman Kodak does not manufacture or sell Pantopaque, it does manufacture and sell ethyl iodophenylundecanoate (iophendylate). The plaintiff contends that this product has only one use. The purchaser of the chemical simply sterilizes and packages the product. The chemical composition of the substance is unchanged. Consequently, Mrs. Fidler argues that Eastman Kodak is responsible for her injuries.

The specific injuries claimed by Mrs. Deborah Fidler are set out in her deposition testimony. Mrs. Fidler there reveals that she has suffered pain in various forms: head pain, pain in her fingers, shoulders, legs, eyes, upper back .and face. She has also experienced seizure activity. Fidler Dep. Tr. 28. It is clear that by July of 1978, the plaintiff had experienced every symptom which she has attributed to the injections of Pantopaque contrast medium. I have attempted to carefully set forth the operative facts of this case, and these facts dictate the ineluctable conclusion that the plaintiff's claim is time-barred.

There is no disagreement that two Massachusetts statutes of limitations are applicable in the dispute at bar. Mass.G.L. c. 260, § 2A governs the negligence claim and provides:

> Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action occurs.

The breach of warranty action is controlled by Mass.G.L. c. 106, § 2–318 and provides:

> Lack of privity between the plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant . . . . All ac-

tions under this section shall be commenced within three years next after the date the injury and damage occurs.

In *Cannon v. Sears,* 374 Mass. 739, 742, 374 N.E.2d 582 (1978), the determinative rule of law in products liability cases was articulated by the Court. The Court in *Cannon* was faced with the question of when the statute of limitations began to run in a products liability action under Mass.G.L. c. 260 § 2A. There were four possible dates: The time of manufacture, the time of sale, the date of injury, and the date of discovery of the injury. Mass.G.L. c. 260 § 2A was construed as commencing to run on the date of injury.

Application of the time of injury measure of accrual in products-liability-negligence cases has the distinct advantage of paralleling the accrual of action rule in breach of warranty cases. *Id.* at 743, 374 N.E.2d 582.

However, in *Cameo Curtains, Inc. v. Philip Carey Corp.,* 1981, —— Mass.App. ——, ——, 416 N.E.2d 995, Mass.App.Ct.Adv.Sh. 411, 413, the Appeals Court construed the addition of the words "and damage" to § 2–318 (in 1974) "as extending the beginning of the limitations period from the time when the injury is first perceived to the time when the damages flowing from the injury can be fairly estimated." *See also Hoffman v. Howmedia, Inc.,* 373 Mass. 32, 364 N.E.2d 1215 (1977).

The Supreme Judicial Court in *Cannon* refused to address the argument that a discovery rule should be extended to products liability cases. The plaintiff in *Cannon* was injured when a ladder collapsed. Both injury and discovery of the injury were simultaneous events. Nevertheless, the Supreme Judicial Court has announced the discovery rule as applicable in medical malpractice suits, legal malpractice suits, and suits alleging the tort of deceit. *See Franklin v. Albert,* 1980, 381 Mass. 611, 411 N.E.2d 458, *Hendrickson v. Sears,* 365 Mass. 83, 310 N.E.2d 131 (1974); *Friedman v. Jablonski,* 371 Mass. 482, 358 N.E.2d 994 (1976).

The applicability of the discovery rule has not been decided by the Massachusetts Su-

preme Judicial Court in the context of a products liability negligence action. However, in a DES case, Judge Skinner concluded that the Supreme Judicial Court would apply the discovery rule. *Citing Franklin v. Albert, supra,* Judge J. Walter Skinner wrote:

I conclude that the Court would apply what would be in practical effect a discovery rule, even if it were cast in terms of defining "injury and damage." The Supreme Judicial Court has in these cases evidenced a clear disinclination to punish "blameless ignorance [citation omitted] by barring an action before the plaintiff *knew* or *had reason to know* he or she had a claim."

*Payton v. Abbott Labs,* 76–1514–5, *Memorandum on Certification to the Supreme Judicial Court,* slip op. at 5 (D.Mass. January 15, 1981). In *Franklin,* the court held that a cause of action for medical malpractice under Mass.G.L. c. 260 § 4 accrues when the patient *learns,* or *reasonably should have learned* that he has been harmed by the defendant's conduct.

On July 15, 1982, Judge Skinner's opinion was used as supportive authority by Judge A. David Mazzone in the case of (Judge) *Margaret Burnham, et al v. A.H. Robbins Co., Inc.,* C.A. No. 81–824–MA, *Memorandum and Order,* slip op. (D.Mass. July 15, 1982). Though Judge Mazzone acknowledges that the Supreme Judicial Court has not spoken on the question, he stated that the law was clear on the issue. Judge Skinner's position was viewed as accurate. *Id.* at 2–3. Judge Mazzone observed that in a diversity suit, the federal court must apply state substantive law. However,

[in] the absence of a definite ruling by the highest state court, a federal court may consider analogous decisions, considered dicta, scholarly works, and other reliable data tending convincingly to show how the state would decide the issues at hand, taking into account the broad policies and trends so evinced. [citations omitted]. *Id.* at 2.

■ Judge Mazzone, as did Judge Skinner, decided the decisions of the Supreme

Judicial Court in analogous areas of tort law demonstrated a trend toward applying the discovery rule. The Supreme Judicial Court has announced the principle "[t]hat limitation statutes should apply equally to similar facts regardless of the form of proceedings . . . ." *Hendrickson, supra* at 85, 310 N.E.2d 131. Consistent with the view of Judges Skinner and Mazzone, I, too, agree that the discovery rule should apply in products liability cases. The articulation of the rule has been set forth in *Franklin v. Albert, supra,* 411 N.E.2d at 459–60. The critical language is that the cause of action accrues in a medical malpractice case when the patient *learns or reasonably should have learned* that he has been injured by the defendant's conduct. The words "learns" or "reasonably should have learned" are paramount in determining when the statute begins to run. The essence of the standard does not imply that the plaintiff must be able to prove the claim or every element thereof prior to instituting a law suit. The plaintiff would have an adequate period of discovery to prepare her case.

■ The purpose of the "discovery rule" is to avoid barring an action before the plaintiff *knew* or *should have known* he or she had a cause of action. *White v. Peabody Construction Co.,* 386 Mass. 121, 129–30, 434 N.E.2d 1015 (1982). In *White* the Court affirmed a summary judgment for the defendant. The plaintiffs were aware of the leaking roof; they had been "plagued with serious leakage from its inception (1975)." The plaintiffs knew they had suffered injury thereby. The plaintiffs should have known that the leaks were the result of design or construction defect. Yet, they did not bring their action until after the statute of limitations had expired. The plaintiffs argued that their cause of action did not accrue until the *cause* and *cure* of the leaks had been finally determined by the BHA and the BHA had reported its findings to the plaintiffs' attorney. To this argument the Court responded:

This contention reflects a misunderstanding of the relationship between statutes of limitations, the "delayed discovery" doctrine and the "discovery" devices authorized by our rules of civil procedure. In all cases the statute of limitations begins to run when the injured person has notice of the claim. The "notice" required is not notice of every fact which must eventually be proved in support of the claim. These details are properly the subject of requests for discovery once an action is filed. [citation omitted]. Rather "notice" is simply knowledge that an injury has occurred.

Thus, Mrs. Fidler need not have known with absolute certainty the cause of her injury. She did not have to have absolute proof that the injection of Pantopaque was the indisputable cause of her injury. Mrs. Fidler simply needed sufficient information which would lead her to conclude that there was a definite causal relationship between the injections of the drug and the resulting injury. The law does not require a plaintiff to secure all evidence necessary to prove her case before it has been filed in a court of law.

I must conclude that Mrs. Fidler, by September 7, 1978, had reason to know or reasonably should have known of the causal relationship between her injuries and the conduct of the defendant. The Restatement of Torts (2d) defines the terms "reason to know" and "should know." Section 12 presents the following definitions:

(1) The words "reason to know" are used . . . to denote the fact that the actor has information from which a person of reasonable intelligence . . . would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

(2) The words "should know" are used . . . to denote the fact that a person of reasonable prudence and intelligence . . . would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such facts exist.

The expressions "reason to know" and "should know" both refer to facts which are extant. There is, however, a crucial distinction between these expressions. "Reason to know" indicates or denotes that the actor has, within his knowledge, facts from which a reasonable person of ordinary prudence and intelligence might infer the existence of a certain fact in question. Alternatively, the actor would regard the existence of the particular fact in question as so legally probable that he would base his conduct upon the assumption that the fact existed. *Id.* at Comment (a). Contradistinguished from "reason to know" is the phrase "should know." Should know means that the actor is under a duty to exercise due diligence to ascertain the existence or nonexistence of a fact in question. It implies that the existence of such fact would be ascertained if the actor exercises due diligence. Thus, the actor is penalized or held accountable for his failure to gain information or facts, or to proceed on the assumption that the facts existed given the circumstances of the case.[1]

The preceding presentation on these phrases is of import in this dispute because federal courts have used the language "knows" or "has reason to know." The actual language used by the Supreme Judicial Court in *Franklin* is "learns" or "reasonably should have learned." The latter formulation is consistent or synonymous with the language "knows" or "should have known." It is crystal clear, in an instant case, that Mrs. Fidler had reason to know or reasonably should have known of the causal connection which existed between her injuries and the injection of a drug allegedly improperly used because of the negligence of the defendant. Mrs. Fidler was in possession of information from which a reasonable person would have inferred the fact of causation. Accordingly, her conduct should have been governed by the assumption that such fact of causation existed. Therefore, she had reason to know the cause of her physical damage, and can not be excused for her failure to file suit in a timely fashion.

Even if Mrs. Fidler did not have reason to know of the causal fact, she should have known this fact. Mrs. Fidler is a person of ordinary prudence and intelligence. She should have ascertained the existence of the causal connection between her damage and the conduct of the defendant. She would have done so had she proceeded with due diligence. The fact that she obtained legal counsel but a few weeks too late is an indication of this truth. It is clear that the discovery rule places a duty upon the plaintiff to ascertain sufficient information necessary to file the suit or be forever barred

---

1. Section 12, Comment (a) of the Restatement of Torts states that the phrases "reason to know" and "should know" are used throughout the Restatement of Torts in the same sense as they are used in the Restatement of Agency. Section 9 of the Restatement of Agency, Comments (d) and (e) further elucidate these terms of art. Comment 9(d) states:

A person has reason to know of a fact if he has information from which a person of ordinary intelligence, or of the superior intelligence which such person may have, would infer that the fact in question exists *or that there is such a substantial chance of its existence* that if exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence. *The inference drawn need not be that the fact exists; it is sufficient that the likelihood of its existence is so great that a person of ordinary intelligence,* or of the superior intelligence which the person in question has, *would, if exercising ordinary prudence under the circumstances, govern his conduct as if the fact existed, until he could ascertain its existence or nonexistence.* [emphasis mine]

Comment 9(e) states:

A person should know of a fact if a person of ordinary prudence and intelligence, or the intelligence which such person has or professes to have, would ascertain, in the performance of his duty to another, that such fact exists or that there is such a substantial chance of its existence that his action would be predicated upon its possible existence. The words "should know" express the idea that the person of whom they are spoken has a duty to others to ascertain facts or, if he does not ascertain them to act with reference to the likelihood that such facts exist. [A] person is required to ascertain what would be ascertained by a person of ordinary intelligence exercising ordinary care in the protection of *his own interest* or those of others [emphasis mine] . . . .

by a statute of limitations. If a plaintiff fails to ascertain such information from which the cause of injury might be inferred, when in the exercise of ordinary diligence she would have gained such knowledge, that plaintiff is barred after a certain reasonable time period by the statute of limitations. A plaintiff is time-barred because, under the circumstances, she *should have known* that there was a causal relationship between the injuries complained of and some delictual act of the defendant.

The deposition of Deborah Fidler is fatal to her allegations of ignorance. Allowing the plaintiff the benefit of the discovery rule, she fails to overcome the forceful statute of limitations argument proffered by the defendant. Mrs. Fidler's deposition reveals that she had definite physical side effects after each injection of Pantopaque. The injections occurred on October 16, 1973, March 18, 1975, and September 19, 1977. After having an arteriogram, Mrs. Fidler was informed by Dr. Butler that, in his opinion, Pantopaque was causing all of her problems. Indubitably, at this point, Mrs. Fidler had reason to know or reasonably should have known of the causal link between her physical injuries and the chemical injections. Though Mrs. Fidler did not have absolute proof of causation, such is not required by the statute of limitations or the discovery rule. The purpose of limitation statutes would be defeated if the plaintiff could toll the running of the statute by simply arguing that no lawyer would take her case or no doctor would testify as to the cause of her injuries. Mrs. Fidler filed her suit on September 23, 1981, more than three years after the discovery of the injury.

The plaintiff contends that from 1978 through 1980 she consulted four attorneys who informed her that without a doctor who would testify as to causation, she did not have a case. Fidler Aff. ¶ 9, 12, 13. Mrs. Fidler poetically describes herself as a "prisoner within the walls of medical science." She states that she went from physician to physician and none was willing to unconditionally confirm causation. Dr. Butler told her she had no claim against anyone because some Pantopaque is always left after a myelogram. Dr. Butler is not a lawyer; it is obvious that the plaintiff did not believe him. She found a law firm to file this suit.

It is indeed unfortunate that Mrs. Fidler had negative experiences with lawyers and doctors; such experiences are a part of the mischances of life. However, the mere fact that this suit was filed only a few weeks too late is testimony that had the plaintiff exercised due diligence, the suit would have been filed in a timely fashion. Consequently, pursuant to Rule 56 of the Fed.R.Civ. Proc., the defendant's motion for summary judgment is allowed. Judgment shall be entered in accordance with this opinion. Be it SO ORDERED.