DONALD J. FIDLER & another[1] *vs.* E. M. PARKER CO.,
INCORPORATED & another.[2]

Middlesex.   December 4, 1984. — April 12, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Collateral Estoppel. Limitations, Statute of. Practice, Civil,* Summary judgment. *Negligence,* Manufacturer, Causing loss of consortium. *Warranty. Husband and Wife,* Consortium.

Discussion of the standards for applying the doctrine of collateral estoppel. [539-540]
In an action seeking damages from two defendants for negligence and breach of express and implied warranties, the doctrine of collateral estoppel precluded Massachusetts courts from considering whether the plaintiff's claims were barred by the applicable statutes of limitation, where a Federal District Court, applying Massachusetts law in an earlier case by the plaintiff against a different defendant, but arising out of the same occurrence, had determined the issue adversely to the plaintiff and where summary judgment in favor of the defendant in the Federal case had been affirmed by a United States Court of Appeals. [540-547]
The doctrine of collateral estoppel precluded a husband from litigating the issue whether his claim for loss of consortium was barred by the applicable statutes of limitation, in circumstances where his wife, by reason of a prior Federal court decision unfavorable to her, was held to be collaterally estopped from relitigating the statute of limitations issue with respect to her injury claims which had occasioned the alleged loss of consortium, even though the husband was not joined as a plaintiff in the Federal court action. [547-548] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on March 24, 1983.

The case was heard by *Edith W. Fine,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

[1] Deborah F. Fidler.

[2] Lafayette Pharmacal, Division of Alcon Laboratories.

*Cynthia J. Cohen (Gary D. Buseck* with her) for the plaintiffs.

*Susan J. Baronoff (John C. Wyman* with her) for the defendants.

LYNCH, J. The plaintiffs brought this action on March 24, 1983, against E. M. Parker Co., Incorporated (Parker), and Lafayette Pharmacal, a division of Alcon Laboratories (Alcon). Deborah Fidler seeks damages for negligence and breach of express and implied warranties for injuries allegedly caused by Pantopaque contrast medium.[3] She claims that, as a result of the use of Pantopaque in the course of three myelograms,[4] she suffered injury, including severe head, face, and eye pain. Her husband, Donald Fidler, seeks damages for loss of consortium. The plaintiffs brought this action in the Superior Court after judgment had entered against Deborah Fidler in an earlier suit against Eastman Kodak Company, manufacturer of the chemical used in producing Pantopaque. See *Fidler* v. *Eastman Kodak Co.,* 714 F.2d 192 (1st Cir. 1983), aff'g, 555 F. Supp. 87 (D. Mass. 1982). There, the United States Court of Appeals for the First Circuit held that the applicable three-year statutes of limitations, G. L. c. 260, § 2A, and c. 106, § 2-318, barred her claims against Eastman Kodak. *Id.* at 198-200.

After the plaintiffs brought this second action, the defendants requested summary judgment, contending inter alia that the claims are barred by the applicable statutes of limitation and are precluded by the doctrine of collateral estoppel. After a hearing, the motion judge granted summary judgment for the defendants on the ground that the statutes of limitation had run. The plaintiffs appealed to the Appeals Court, and we granted their application for direct appellate review. We affirm the judgment of the Superior Court granting summary judgment

---

[3] Pantopaque is a product that Alcon manufactures from a chemical purchased from Eastman Kodak Company and then sells to distributors like Parker.

[4] A myelogram is an x-ray visualization or photograph of the spinal cord after injection of a contrast medium into the spinal subarachnoid space. The x-ray scans the flow of the contrast medium as it moves in the spinal column, in order to aid the physician in detecting deviations, obstructions, or deformities.

for the defendants, but do so on the ground that the plaintiffs are precluded by the doctrine of collateral estoppel from litigating the issue whether the statutes of limitation bar their claims.

We summarize the sequence of events leading to the two successive lawsuits. In May, 1973, Deborah Fidler injured her back while lifting a patient at a nursing home where she was working as a nurse's aide. In October, 1973, she was admitted to St. Elizabeth's Hospital complaining of back and leg pain. A myelogram was performed at the time to determine the source of her back pain. Pantopaque was injected into her spine in the course of the myelogram. When she continued to experience pain, apparently in her back, shoulders, arms, and fingers, a second myelogram was performed in March, 1975. After the second myelogram, she experienced a severe headache. She testified at her deposition that, beginning in June, 1976, she experienced facial and head pain which has continued intermittently to plague her. A third myelogram was performed in September, 1977, after which she experienced severe back and head pain. In 1980, she began to experience eye pains.

At her deposition, Deborah Fidler testified that she was first informed of a potential causal relationship between her pain and Pantopaque contrast medium on September 7, 1978, the date on which she had a cerebral arteriogram. Her physician, Dr. Russell B. Butler, performed the arteriogram in order to determine whether she had a tumor. She testified that, on the evening of September 7, Dr. Butler informed her that they had found no tumor, and that he thought that her problems were caused by the presence of Pantopaque in her spinal column as a result of one of the myelograms.[5] After that time, Dr. Butler never stated definitively that her head pain was caused by the remaining Pantopaque, but he continued to indicate that it could

---

[5] Deborah Fidler testified at her deposition concerning the statement made by Dr. Butler on September 7 about the results of the cerebral arteriogram. "He said that they were looking for a tumor in a certain portion, and he, you know, had told me before where it was, down in here. And he said, 'We didn't find — there were no tumors,' he said, 'but what we think was causing all your problems was,' he said, 'we found like a glob of Pantopaque,'

be the cause. In 1979, he referred her to Dr. James G. Wepsic at the Massachusetts General Hospital for evaluation as to whether the presence of Pantopaque was causing her facial pain. Dr. Wepsic told her that there was a possibility that Pantopaque was causing her pain. Her pain abated during most of 1980, while she was pregnant, but subsequently returned. She began to experience severe pains in her eyes in October, 1980. She has since consulted at least two more physicians. In mid-1981, Dr. H. Stephen Kott at the Lahey Clinic reviewed two CAT scans and told her that there was a "pretty good possibility" that Pantopaque was causing her problems, but stated that he was "unable to establish any definite relationship between the Pantopaque and her pain syndrome." Dr. Kott consulted with a neuroradiologist who told him that he "ha[d] seen some cases where pantopaque has produced various pain syndromes, but of course it is very hard to be sure whether there is [a] cause [and] effect relationship here." In March, 1982, she consulted Dr. Dawson at the Peter Bent Brigham Hospital. He mentioned the possibility that Pantopaque was causing her pain. In May, 1982, she contacted Dr. George Margolis who stated that Pantopaque was more likely than not the cause of her injuries.[6]

Deborah Fidler consulted with several attorneys between 1979 and September 23, 1981, when she instituted the earlier lawsuit against Eastman Kodak. In January, 1979, she consulted an attorney who advised her that she had no case against the doctors or the hospitals where the myelograms had been performed. During 1979, she consulted three other attorneys, each of whom indicated that she had no case unless she could find a doctor who would say that her pain was caused by the presence of Pantopaque. In December, 1980, she retained her present attorney, who has represented her in the two successive lawsuits.

---

he said, 'that would be left over from one of your myelograms. And it has wedged itself into someplace called Meckel's cavity, and it is close to some nerve endings, and it is causing some scar tissue.'"

[6]The plaintiffs intend to rely upon the testimony of Dr. Margolis, a former professor of pathology at Dartmouth Medical School, if we reverse the Superior Court judgment and allow the case to go to trial.

Deborah and Donald Fidler commenced this products liability action on March 24, 1983, against Parker and Alcon. Deborah Fidler alleges in her amended complaint that it was not until May 17, 1982, that she was able to learn that Pantopaque contrast medium was the cause of her pain. She had, however, previously filed a lawsuit aginst Eastman Kodak on September 23, 1981, in the Superior Court. In that suit she alleged negligence and breach of warranty, and sought damages for injuries allegedly caused by Pantopaque contrast medium. Eastman Kodak removed that case to Federal District Court on the ground of diversity of citizenship. *Fidler* v. *Eastman Kodak Co.*, 555 F. Supp. 87, 88 (D. Mass. 1982). On March 9, 1982, Eastman Kodak moved for summary judgment on three grounds, one of which was that the applicable statutes of limitation barred her action. On April 28, 1982, she filed a corrected motion to amend her complaint by adding her husband, Donald Fidler, as a party plaintiff, and by adding Lafayette Pharmacal, Division of Alcon Laboratories, as a party defendant.

After a hearing, the Federal District Court in the earlier suit concluded that there was no genuine issue of material fact as to the running of the statutes of limitation, and granted summary judgment. *Id.* at 88. The District Court judge concluded that, under Massachusetts law, the "discovery rule" applied to determine the time of accrual of both claims under the applicable statutes of limitation, G. L. c. 260, § 2A (negligence claim), and G. L. c. 106, § 2-318 (breach of warranty claim). *Id.* at 89-90. Applying the Massachusetts "discovery rule," the court found that Deborah Fidler's claims had accrued more than three years before she instituted the action because she "had reason to know or reasonably should have known of the causal connection which existed between her injuries and the injection of a drug allegedly improperly used because of the negligence of the defendant [Eastman Kodak]." *Id.* at 92. The court concluded that the statutes began to run on September 7, 1978, when Dr. Butler told her that he thought that the Pantopaque contrast medium remaining in her spinal column was the cause of her problems. *Id.* at 91-93. The court did not

act on her corrected motion to amend her complaint by adding her husband as plaintiff and Alcon as a defendant. Deborah Fidler appealed to the United States Court of Appeals for the First Circuit, which affirmed, concluding that summary judgment was appropriate because the statutes of limitation had run on her claims. *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192, 198-200 (1st Cir. 1983).

In the present action, Parker and Alcon have raised the two statutes of limitation and the doctrine of collateral estoppel as alternative defenses to the plaintiffs' claims. The judge below granted summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the ground that the applicable statutes of limitation, G. L. c. 260, § 2A, and c. 106, § 2-318, barred the plaintiffs' claims. We conclude that the motion judge properly granted summary judgment for the defendants, but hold that the proper basis for this judgment is that the plaintiffs are precluded by the earlier judgment in the Federal court from litigating the issue whether those statutes of limitation bar their claims.

1. *General standards for applying collateral estoppel.* "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana* v. *United States*, 440 U.S. 147, 153 (1979), quoting *Southern Pac. R.R.* v. *United States*, 168 U.S. 1, 48-49 (1897). See *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 452-456 (1968); Restatement (Second) of Judgments § 27 (1982). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. . . . To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple

lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions" (citations and footnote omitted). *Montana* v. *United States, supra* at 153-154. *Allen* v. *McCurry,* 449 U.S. 90, 94 (1980).

One of the two plaintiffs in the instant case, Deborah Fidler, was the plaintiff in the prior action against Eastman Kodak. Donald Fidler, who seeks damages for loss of consortium, was never joined as a plaintiff in the earlier suit.[7] Deborah Fidler's claims are identical to those in the earlier suit. She seeks damages for negligence and breach of warranties because of injuries allegedly caused by Pantopaque contrast medium. She seeks recovery, however, from Alcon and Parker, neither of who was joined as a defendant in the earlier lawsuit.[8] Determination whether it is appropriate to preclude litigation of the plaintiffs' claims requires, therefore, a two-part analysis: first, whether Deborah Fidler is precluded from relitigating statutes of limitation issues in circumstances where the defendants were not parties to the earlier action and, second, whether Donald Fidler is precluded from litigating the issue of the effect of the statutes of limitation on his loss of consortium claim, in circumstances where he and both defendants were not parties to the earlier lawsuit.

2. *Application of collateral estoppel standards.* In deciding whether to apply collateral estoppel and give preclusive effect to a Federal court judgment, Massachusetts courts look to

[7] In her corrected motion to file an amended complaint in the earlier suit, Deborah Fidler sought to join her husband as a party plaintiff, and Alcon as a codefendant. Apparently, she recognized the propriety of joining both of these parties in her earlier suit. The Federal court did not reach her motion, however, before it granted summary judgment for defendant Eastman Kodak.

[8] If Deborah Fidler had joined Parker and Alcon as defendants in the earlier lawsuit, Eastman Kodak could not have removed the action to Federal court because complete diversity of citizenship would have been lacking. See *Zousmer* v. *Canadian Pac. Air Lines,* 307 F. Supp. 892, 895 (S.D. N.Y. 1969). Her claims in the earlier action could, therefore, have been resolved in a State court proceeding in the first instance, if she had joined all three defendants.

Federal law. *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 449 (1982). It is well established under Federal law that a defendant who was not a party to the earlier action may invoke the doctrine of collateral estoppel if the plaintiff had a full and fair opportunity to litigate the issue, and if equitable considerations otherwise warrant precluding relitigation. See *Allen* v. *McCurry, supra* at 94-95; *Montana* v. *United States, supra* at 154-155; *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 349-350 (1971). Cf. *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326-333 (1979) (allowing nonmutual application of collateral estoppel offensively); *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co., supra* at 455 ("[O]ne not a party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided"). The standard generally applied to determine whether to preclude a party from relitigating an issue with a person not a party in the earlier action is whether the party "lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." Restatement (Second) of Judgments, *supra* at § 29.

It is clear that the underlying issues raised by Deborah Fidler here are identical to those decided by the United States Court of Appeals for the First Circuit in *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192 (1st Cir. 1983). It is, therefore, necessary to consider first whether the findings relied upon are "the product of full litigation and careful decision." *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co., supra* at 455. Determination whether Donald Fidler's claim is precluded entails an additional consideration because "[t]he claim for loss of consortium is independent of the claim of the injured spouse." *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 176 (1983). Since Donald Fidler's cause of action is independent of Deborah Fidler's claims, it is necessary to determine whether they are sufficiently related to warrant application of collateral estoppel principles to preclude his claim. See *id.* at 176-177. If the foregoing tests are satisfied,

we must then consider if other circumstances exist which warrant relitigation of the issues, having in mind "the strong and oft-stated public policy of limiting each litigant to one opportunity to try his case on the merits." *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co., supra* at 455.

a. *Deborah Fidler's claims of negligence and breach of warranty.* Deborah Fidler argues that it would be inequitable to apply collateral estoppel to bar her claims on several grounds: (1) she did not voluntarily choose to litigate them in Federal court; (2) the Federal court decision in the prior action involved an important and unresolved question of State law; and (3) the Federal court did not apply the correct standard in deciding that the Massachusetts statutes of limitation barred her claims. We conclude that her arguments are unpersuasive and do not warrant excusing her from the preclusive effect of collateral estoppel.

First, Eastman Kodak's removal of her action to Federal court did not deprive her of a "full and fair opportunity" to litigate the statutes of limitation issues. As the defendants point out, she could have avoided removal of the first action by joining Parker as a codefendant.[9] Once in Federal court, furthermore, she appears to have had a "full and fair" hearing on the statutes of limitation issues. She appealed from the decision of the Federal District Court to the First Circuit, so that two courts considered her arguments. Both courts issued thorough, written opinions in which they carefully considered the merits of her assertion that the applicable statutes of limitations do not bar her negligence and breach of warranty claims because they accrued after September 23, 1978. Since Deborah Fidler could have sued Parker and Alcon at the outset in the earlier action,[10] there is no unfairness in applying collateral estoppel on the ground that she was unable to join them or otherwise to litigate her claims against them in the first action.

---

[9] E.M. Parker Co., Incorporated, is a Massachusetts corporation.

[10] See note 7, *supra.*

She also argues that it would be inequitable for this court to apply collateral estoppel because, in reaching their decisions, the Federal courts had to divine an important and unresolved question of Massachusetts law.[11] The Federal courts concluded that, under Massachusetts law, the "discovery" rule applied to determine when Deborah Fidler's negligence and breach of warranty claims accrued for purposes of the applicable statutes of limitation, G. L. c. 260, § 2A, and c. 106, § 2-318.[12] They held that, under this rule, her claims had accrued no later than September 7, 1978, when Dr. Butler told her that he thought that residual Pantopaque was the cause of her problems. *Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 196-200 (1983). "As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States* v. *Stauffer Chem. Co.,* 464 U.S. 165, 170-171 (1984). See *United States* v. *Moser,* 266 U.S. 236, 242

---

[11] We are unable to determine from the record whether she made a motion to certify any question of Massachusetts law to this court. She states in her brief that she argued unsuccessfully to the Federal District Court to certify a question concerning the statutes of limitation. The defendants contend, however, that her request was buried in a footnote to her memorandum in opposition to Eastman Kodak's motion for summary judgment. In light of her argument that the issues decided by the Federal courts involved important and unresolved questions of State law, we conclude that the certification procedure might have been an effective means to resolve those questions and avoid duplicative litigation. Her argument that the issues are, in fact, important and unresolved would have been strengthened by a showing that she actively petitioned the Federal District Court to certify a question to this court.

[12] General Laws c. 260, § 2A, as amended by St. 1973, c. 777, § 1, provides in relevant part: "Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues."

General Laws c. 106, § 2-318, as amended by St. 1974, c. 153, provides in relevant part: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. . . . All actions under this section shall be commenced within three years next after the date the injury and damage occurs."

(1924) ("[A] *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law" [emphasis in original]). The Restatement provides, however, for an exception to the general rule of issue preclusion when "[t]he issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . ." Restatement (Second) of Judgments, *supra* at § 28 (2). Neither exception applies here, in view of the close identity of issues and parties and in view of the apparent availability of joinder in the first instance in the Federal court. See *id.* at § 29 (3).

At the time of the Federal District Court decision, we had not addressed the question whether the discovery rule would apply in a products liability action. We had, however, applied the discovery rule in other tort actions. See *Franklin* v. *Albert,* 381 Mass. 611, 619 (1980) (discovery rule applied to medical malpractice claim); *Friedman* v. *Jablonski,* 371 Mass. 482, 485-486 (1976) (deceit in sale of real estate); *Hendrickson* v. *Sears,* 365 Mass. 83, 90-91 (1974) (attorney's negligent certification of title). After lengthy consideration of application of the discovery rule by this court and by the Federal court for the District of Massachusetts sitting in diversity cases, the Federal District Court concluded that the discovery rule applied to both the negligence and warranty claims. *Fidler* v. *Eastman Kodak Co.,* 555 F. Supp. at 89-91. The court's application of the discovery rule is consistent with our recognition of "the principle that a plaintiff should be put on notice before his claim is barred." *Franklin* v. *Albert, supra* at 619.

After the Federal District Court decision and before the First Circuit decision, we decided *Olsen* v. *Bell Tel. Laboratories, Inc.,* 388 Mass. 171, 174-175 (1983), in which we concluded that the discovery rule applied to a products liability claim arising in the context of an occupational disease allegedly resulting from negligence. The First Circuit in *Fidler* relied on

our *Olsen* decision in concluding that we would apply the discovery rule to a products liability claim of negligence in the context of medical treatment. *Fidler* v. *Eastman Kodak Co.*, 714 F.2d at 196. The court reasoned that we would apply the discovery rule to a products liability action "whether brought under a negligence theory or a breach of warranty theory." *Id.* at 197.

The First Circuit considered whether there should be separate tests under the discovery rule for the two separate claims, and rejected Deborah Fidler's argument that, under *Cameo Curtains, Inc.* v. *Philip Carey Corp.*, 11 Mass. App. Ct. 423 (1981), the date of accrual of the breach of warranty claim should be delayed to the time "when the damage flowing from the injury can [fairly be] estimated." *Fidler* v. *Eastman Kodak Co.*, 714 F.2d at 197, quoting *Cameo Curtains, Inc.* v. *Philip Carey Corp., supra* at 425. The First Circuit relied on our decisions in *Hendrickson* v. *Sears, supra* at 85, and *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 743 (1978), in concluding that we would apply a similar measure of accrual to the two claims. *Fidler* v. *Eastman Kodak Co.*, 714 F.2d at 197. The Federal court's judgment applying the same measure of accrual reflects a reasonable interpretation and application of Massachusetts law.

In applying the discovery rule to determine the date on which the statutes of limitation began to run, the First Circuit initially considered whether this question could be resolved on a motion for summary judgment. It properly applied the test "that there [be] no genuine issue of material fact to be determined by the trier of the fact[s], and that on the law applicable to the established facts, the movant is entitled to judgment." *Id.* at 198, quoting 6 Moore's Federal Practice par. 56.02 [10], at 56-43 (2d ed. 1983). The court concluded that summary judgment was appropriate since "[t]here [was] no dispute between the parties as to the essential evidentiary facts," 714 F.2d at 198, including the September 7, 1978, statement by Dr. Butler which, the court concluded, triggered the running of the statutes of limitation. *Id.* at 199-200. We are unable to discern any inequity in the court's ruling that summary judgment was

appropriate. We have previously held that it may be appropriate to grant summary judgment on the question whether the statute of limitations has run. See, e.g., *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 128-130 (1982). Cf. *Olsen* v. *Bell Tel. Laboratories, Inc., supra* at 172, 174-177 (affirming summary judgment that negligence and loss of consortium claims were barred by the statute of limitations, but issue of propriety of summary judgment was not raised by the parties).

The First Circuit then applied the rule enunciated in *Franklin* v. *Albert, supra,* to the context of a products liability action, and concluded that notice sufficient to trigger the running of the statute of limitations under the discovery rule is "notice that one has been harmed by defendant's conduct [which] is knowledge that one has been harmed by defendant's product." *Fidler* v. *Eastman Kodak Co.,* 714 F.2d at 199. The court concluded that "under Massachusetts law notice of likely cause is ordinarily enough to start the statute running." *Id.* It affirmed the judgment of the Federal District Court that the cause of action had accrued before September 23, 1978, more than three years before the suit. "As of [September 7, 1978, Deborah Fidler] could be said to have learned two things: first, the causal relationship, that her head and facial pain may have resulted from Pantopaque contrast medium remaining in her spinal column from previously performed myelograms; second, the possible mechanics of causation, in Dr. Butler's words, 'a glob of Pantopaque has wedged itself into someplace called Meckel's cavity, and it is close to some nerve endings, and it is causing some scar tissue.' On that basis, she could also have inferred the possibility that someone was at fault . . . ." *Id.* at 198-199. The court considered and then rejected several arguments advanced by Deborah Fidler to support her contention that summary judgment should not have been granted. *Id.* at 199-200. The plaintiff has failed to demonstrate any plain error in the prior decision.

We have carefully considered the various special considerations that would mitigate against applying the doctrine of collateral estoppel, and conclude that Deborah Fidler received a "full and fair" hearing in the Federal court and is now pre-

cluded from relitigating the same issues against the two new defendants.

b. *Donald Fidler's loss of consortium claim.* The Federal courts did not rule on Donald Fidler's loss of consortium claim because he was not initially joined as a plaintiff in the prior action. The Superior Court judge found in this case, however, that his claim was barred by the statutes of limitation. We conclude that the judge below properly granted summary judgment for the defendants on the loss of consortium claim. We rule that he is collaterally estopped by the prior judgment from litigating the issue whether the statutes of limitation bar his claim.

Although it is not as clear that collateral estoppel should apply to preclude a party not a plaintiff in the prior action from litigating an issue, the policy of repose is especially significant when the spouse of a nonprevailing litigant seeks to litigate a claim related to the spouse's alleged injuries. The trend in the law is against allowing suits for loss of consortium where the injured spouse would be collaterally estopped from litigating the same or similar issues. See *Roy* v. *Jasper Corp.,* 666 F.2d 714, 716 (1st Cir. 1981) (holding that, under New Hampshire law, a spouse is collaterally estopped by prior judgment from litigating loss of consortium claim). "When a person with a family relationship to one suffering personal injury has a claim for loss to himself resulting from the injury, the determination of issues in an action by the injured person to recover for his injuries is preclusive against the family member, unless the judgment was based on a defense that is unavailable against the family member in the second action." Restatement (Second) of Judgments § 48 (2) (1982).

Although a claim for loss of consortium is independent of the injured spouse's claim, *Olsen* v. *Bell Tel. Laboratories, Inc.,* 388 Mass. 171, 176-177 (1983), it may accrue under the discovery rule at the same time as the injured spouse's claim. *Id.* It is undisputed in this case that the Fidlers simultaneously received the same information as to causation. The Federal court judgment that, by September 7, 1978, Deborah Fidler had reason to know of the cause of her injuries, should apply

with equal force to Donald Fidler, who was with his wife on September 7, 1978, when Dr. Butler informed her that he thought that Pantopaque was the cause of her injuries. He argues, however, that he did not suffer an appreciable loss of consortium prior to March 24, 1980, three years before this lawsuit was instituted.[13] This argument is inconsistent with undisputed evidence, including his affidavit filed on August 30, 1982, in Federal court, that Deborah Fidler had suffered from back, head, and leg pain prior to 1980. The facts indicate that her head and facial pain began in 1976, and led to two hospitalizations, in September, 1977, for over a week, and in September, 1978, for the cerebral arteriogram.

Deborah Fidler alleges that she experienced "crushing" head and facial pain prior to March, 1980. Donald Fidler concedes that he was present during the September 7, 1978 conversation with Dr. Butler which the Federal court held triggered the running of the statutes of limitation on his wife's claims. Although Donald Fidler's claim is independent, it is based upon the identical facts that led the Federal court to rule against his wife. Neither does it detract from the principle of independence to recognize the pervasive interrelationship between his claim for loss of consortium and the claims of his wife decided in the Federal court. In such a situation we look to see what circumstances exist to warrant relitigation of the issues. We conclude that it would be contrary to the policies of judicial economy and of affording litigants repose, to allow Donald Fidler to circumvent the preclusive effect of the Federal court judgment only because his claim was technically independent of hers. On the facts of this case, Donald Fidler stands on the same footing as his wife for the purpose of the statutes of limitation defenses to his loss of consortium claim. The Federal court judgment precludes litigation in this action of both plaintiffs' statutes of limitation claims.

*Judgment affirmed.*

---

[13] In his complaint, Donald Fidler alleges, "As a result of the injuries sustained by [his wife], . . . his marriage relationship with his wife has been interfered with . . . ."

O'CONNOR, J. (dissenting in part). In *Fidler* v. *Eastman Kodak Co.,* 555 F. Supp. 87, 91-93 (D. Mass. 1982), aff'd, 714 F.2d 192 (1st Cir. 1983), a judge of the United States District Court concluded that by September 7, 1978, Deborah Fidler "had reason to know or reasonably should have known of the causal link between her physical injuries and the chemical injections" of Pantopaque, and that, therefore, the applicable statutes of limitation barred her claims. Donald Fidler, Deborah's husband, was not a party to that litigation, and, because Donald's claim for loss of consortium is independent of Deborah's claim for personal injuries, *Olsen* v. *Bell Tel. Laboratories, Inc.,* 388 Mass. 171, 176-177 (1983), Donald was not in privity with Deborah. Consequently, no principle of collateral estoppel, as that doctrine has been applied heretofore, precludes Donald from relitigating any issue of fact or law that was decided in that case. Furthermore, even if Donald was in privity with Deborah for collateral estoppel purposes, that doctrine does not bar Donald from litigating the date on which his cause of action for loss of consortium accrued, because that issue was not determined in the Federal court litigation.

The court correctly states that, under the doctrine of collateral estoppel, a determination of fact or law by a court of competent jurisdiction cannot be disputed in subsequent litigation by a party to the earlier litigation or by one who is in privity with such a party. See *Montana* v. *United States,* 440 U.S. 147, 153-154 (1979). The court also correctly applies that principle to bar Deborah from relitigating the date on which her cause of action accrued. But the court disregards the limits of that principle by applying it to bar Donald's claim. Long ago, this court said that a married woman's action to recover damages for personal injuries and her husband's action for loss of consortium "are separate actions to recover damages which each suffered individually from the same wrong. Except so far as the consequences of the wrong are to be considered in assessing damages, the liability of the defendant depends upon the same facts in each case; but the actions are as independent of each other as are two actions founded on a collision of two teams, caused by the negligence of the defendant, one brought by the

driver, a servant of the owner of the team, to recover for his personal injuries, and the other by the owner, to recover for damages to his horses and wagon. The defendant's liability for the damages in the two cases depends upon the same facts, *but there is no privity between the plaintiffs. Each is enforcing an independent right.*

"*A judgment in one of these cases cannot be put in evidence in a subsequent trial of the other.* A former adjudication is binding only upon the parties to the suit and those who are in privity with them. . . . As was said in *Sturbridge* v. *Franklin,* 160 Mass. 149, 151 [1893], 'It creates no privity between two parties that, as litigants in two different suits, they happen to be interested in proving or disproving the same facts.'" (Citations omitted. Emphasis added.) *Duffee* v. *Boston Elevated Ry.,* 191 Mass. 563, 564 (1906). See also *Feltch* v. *General Rental Co.,* 383 Mass. 603, 606-609 (1981) (because loss of consortium claim independent of personal injury claim, consortium claimant not subject to defenses available against personal injury claimant); *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 519-530 (1980) (even though Workmen's Compensation Act bars employee's personal injury claim, it does not bar spouse's or minor children's loss of consortium claims). Because Donald was not a party to the litigation in the Federal court nor a privy to a party in that litigation, principles of collateral estoppel do not bar Donald's claim.

Furthermore, even if Donald had been a party or privy to a party in the Federal litigation, principles of collateral estoppel would not bar him from litigating whether the statutes of limitation bar his claims. Collateral estoppel "can be used only to prevent 'relitigation of issues actually litigated' in a prior lawsuit." *Nevada* v. *United States,* 468 U.S. 110, 130 n.11 (1983), quoting from *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322, 326 n.5 (1979). The court fails to recognize that the Federal judge did not decide in Deborah's case the date on which Donald first sustained his claimed loss of consortium. While resolution of that issue is essential to a determination whether Donald's claim is time-barred, no court has yet resolved it. Loss of consortium consists of the loss of companion-

ship, affection, and sexual enjoyment of one's spouse. *Feltch* v. *General Rental Co., supra* at 609. *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 146 (1976). Often it occurs simultaneously with the occurrence of a spouse's injury, but, depending on the nature and progression of the injury, an appreciable loss of consortium may not occur until long after the injury. See *Olsen* v. *Bell Tel. Laboratories, Inc., supra* at 176-177. Until Donald knew or reasonably should have known that he had sustained an appreciable loss of consortium, his cause of action did not accrue. *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C., ante* 265, 268 (1985). The Federal judge's determination that Deborah's cause of action arose on September 7, 1978, did not address the question when Donald's cause of action arose, *Fidler* v. *Eastman Kodak Co.,* 555 F. Supp. at 87, and, absent a finding as to when Donald experienced an appreciable loss of consortium, his presence at the September 7, 1978, meeting with Dr. Butler is immaterial to a determination of when Donald's cause of action accrued. Donald's claim is not "based upon the identical facts that led the Federal court to rule against his wife." *Ante* at 548. His claim is based on his injuries, while her claim is based on her injuries. The date of accrual of each cause of action must be determined separately. *Olsen* v. *Bell Tel. Laboratories, Inc., supra* at 177.

The court detects a "trend in the law . . . against allowing suits for loss of consortium where the injured spouse would be collaterally estopped from litigating the same or similar issues." *Ante* at 547. For proof of that trend, the court offers one decision of the United States Court of Appeals for the First Circuit, and Restatement (Second) of Judgments § 48 (1982). In *Roy* v. *Jasper Corp.,* 666 F.2d 714 (1st Cir. 1981), construing New Hampshire law, the court concluded that "[e]ven though the spouses are separate individuals, there is no point in allowing litigation of issues in a loss of consortium action *when those same issues have been litigated in the underlying claim.* Collateral estoppel, issue preclusion, was therefore proper against Mrs. Roy *with respect to the causation issue which had been determined in her husband's workmen's com-*

*pensation suit*" (emphasis added). *Id*. at 718. Because, in the instant case, the Federal judge did not determine when Donald first suffered an appreciable loss of consortium, *Roy* v. *Jasper Corp., supra,* does not support the application of issue preclusion against Donald.

Neither does § 48 of the Restatement (Second) of Judgments support the court's position. Comment c to § 48 states that loss of consortium can be characterized either as independent of the underlying personal injury claim or as derivative from it. "The position taken [here]," the comment continues, "is that the claim for these losses should be regarded as derivative." Of course, if Donald's loss of consortium claim were not considered independent of Deborah's personal injury claim, any defense to Deborah's claim would likewise apply to Donald's claim. But the law of this Commonwealth is otherwise. In *Feltch* v. *General Rental Co., supra* at 606-607, this court wrote: "[A] claim for loss of consortium [may] be viewed as a derivative or an independent claim. The courts that have characterized the consortium action as derivative have viewed the husband and wife as a single unit or have viewed the cause of action for loss of consortium as arising from the physical injury to one spouse. . . . Those courts which view the action as independent have analyzed the differences in the damages sustained by each spouse and have concluded that these differences create distinct causes of action, despite the fact that the consortium action and the negligence action arise out of injuries to one spouse. . . . Our prior cases indicate that a claim for loss of consortium is independent of the damage claim of the injured spouse." (Citations omitted.)

Apparently accepting the result that recognition of Donald's and Deborah's claims as independent would require, the court characterizes the claims as only "technically independent," *ante* at 548, as if to say that they are not independent at all. But the court can reach its result only by ignoring or overruling the longstanding rule that declares a spouse's loss of consortium claim independent of the underlying personal injury claim. That rule is a good one, and it should not be overruled, obliquely or otherwise. Donald's claim is technically, legally, and fully

independent of Deborah's claim, and therefore, the court's conclusion that "Donald Fidler stands on the same footing as his wife for the purpose of the statutes of limitation defenses to his loss of consortium claim," *ante* at 548, is incorrect. Because the claims are independent, a determination that the underlying personal injury claim is time-barred should not bar the loss of consortium claim.

Because collateral estoppel should not bar Donald's claim for loss of consortium, and because the defendants have failed to support their motion for summary judgment with unrefuted affidavits or other documents establishing as a matter of law that Donald's cause of action arose more than three years before the commencement of his action, I would reverse the judgment against Donald and remand his case to the Superior Court for further proceedings.