EASTERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.*
TRUSTEES OF THE EASTERN MASSACHUSETTS
STREET RAILWAY COMPANY.

Suffolk.   October 20, 21, 1925. — November 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Eastern Massachusetts Street Railway Trustees. Municipal Corporations, License to carriers by motor vehicle.*

The provisions of § 11 of Spec. St. 1918, c. 188, do not relieve the trustees of the Eastern Massachusetts Street Railway Company, after they have procured from the department of public utilities authority to operate motor vehicles for the transportation of passengers for hire, from the

additional requirements contained in G. L. c. 159, §§ 45-49, of securing licenses from the licensing boards of the several municipalities in which it is desired to operate the motor vehicles.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 28, 1925, to determine whether the defendants, without being licensed so to do by local municipal authorities, had the right to operate motor vehicles in municipalities where they then were operating or were authorized to operate street cars under track locations, franchise and other rights, and, if they had such right, whether it was their duty in the circumstances so to operate motor vehicles; and for an order enjoining the trustees to operate motor vehicles in those municipalities if and to the extent they deemed it would be their duty to operate if they had the right to do so without being licensed.

The defendants filed an answer, and the suit was reserved by *Pierce, J.,* for determination by the full court upon the bill and answer.

*B. B. Jones,* for the plaintiff.

*P. G. Carleton,* for the defendant.

*Joseph Wentworth, amicus curiae,* by leave of the court submitted a brief.

RUGG, C.J. This is a suit in equity reserved on the bill and answer. The plaintiff is a street railway company organized under Spec. Sts. 1918, c. 188, for the purpose of taking over the assets and franchises of another street railway company then in the hands of a receiver. It has all the powers and privileges of a street railway company organized under the general laws so far as applicable. The defendants constitute a public board, called the trustees, created by said c. 188, to whom is given until 1929 the general control of the plaintiff and, with limited exceptions, of all its corporate powers. In general they are required to charge such rates and fares as will defray the costs of the service including operation, maintenance, interest on stock and bonds and proper allowances for depreciation, obsolescence and rehabilitation. The plaintiff is in effect under the management of public trustees for the benefit of all parties concerned. The purpose of the suit is to ascertain whether the defendants are

empowered under the law to operate motor vehicles or buses without licenses from licensing boards in cities and towns under G. L. c. 159, § 45, as amended by St. 1925, c. 280.

The history of the statutes relating to the operation of motor vehicles known as buses on public ways may be briefly stated.   First it was provided by St. 1916, c. 293, that cities and towns accepting the act should have authority to license and regulate the transportation of passengers for hire between fixed termini by motor vehicle.   *Commonwealth* v. *Slocum,* 230 Mass. 180.   That statute conferred no authority on street railway companies to operate motor vehicles for the transportation of passengers for hire.   Such authority was conferred by St. 1918, c. 226, § 1, to be exercised only upon approval by the public service commission, as it was then, now the department of public utilities.   By § 2, street railway companies thus operating motor vehicles were made subject to St. 1916, c. 293, and all persons operating motor vehicles for the carriage of persons for hire, in such manner as to afford transportation similar to street railways by indiscriminately receiving and discharging passengers along the route, were made subject to rules and regulations prescribed by local licensing authorities.   It was provided by § 3 that, in cities and towns which had not accepted said c. 293, the public service commission should have jurisdiction to license and regulate such motor vehicle transportation. The law was extended by St. 1919, c. 371, to prohibit the operation on the highways of motor vehicles for the carriage of passengers for hire in such manner as to afford transportation similar to that afforded by street railways and between fixed termini unless such operation was licensed by local authorities.   The two earlier statutes were repealed by § 7 of that act.   These several provisions as to license and regulation of motor vehicles for the carriage of passengers for hire on highways were embodied in G. L. c. 159, §§ 45-49, both inclusive, and as to authority to street railways to conduct such transportation, in G. L. c. 161, § 44.   It was provided by St. 1925, c. 125, that a railroad corporation with the approval of the department of public utilities might operate motor vehicles for the transportation of passengers

and freight, subject among other conditions to the provisions of G. L. c. 159, §§ 45-49, as to licenses by local authorities. By St. 1925, c. 280, amendment was made to G. L. c. 159, § 45, but provision was retained respecting licenses by local authorities for the operation of motor vehicles for the carriage of passengers for hire, so far as concerns the present suit.

It thus appears that statutes of general scope require licenses from local authorities for the use of motor vehicles for the transportation of passengers for hire. These general provisions are not rendered inapplicable to the plaintiff by any provisions of Spec. St. 1918, c. 188. It is provided by § 1 that the plaintiff shall exercise all powers and privileges of a street railway company under general laws and be subject to all its obligations. By § 11, the defendants as trustees are given power "to regulate and fix rates and fares, including the issue, granting and withdrawal of transfers, and the imposition of charges therefor, and shall determine the character and extent of the service and the facilities to be furnished, and in these respects their authority shall be exclusive, and shall not be subject to the approval, control or discretion of any other State board or commission," with exceptions not here material. The trustees also are given power by § 14 to "fix such rates and fares as, in their judgment, will produce sufficient income to meet" all costs, expenses and required return on capital for the accomplishment of which the public operation was established. The requirement imposed upon the trustees to "determine the character and extent of the service and the facilities to be furnished" is expressed in words of large import. In different context they might carry a wide signification and confer the exercise of untrammeled judgment as to the subject matter. The circumstances accompanying their employment in the statute narrow such unbounded meaning. They are used with respect to a street railway company. At the time they first occurred in the statute, no street railway company was permitted to operate motor vehicles in the nature of buses on highways for the carriage of passengers for hire. That power was not conferred until St. 1919,

c. 371, § 4, enacted more than a year later than the special act under which the plaintiff was incorporated and later than the organization of the plaintiff. That power then was conferred with the express stipulation that any street railway company availing itself thereof should in such operation be subject to the other provisions of the act, which included license by local authority. The Legislature in the use of these words cannot rightly be thought to have intended to exempt from the apparently unqualified terms of St. 1919, c. 371, § 4, conferring an entirely new power, a street railway company incorporated under a preëxisting special act. The reënactment of this section in G. L. c. 161, § 44, is also upon the specified condition that the operation of motor vehicles by street railway companies shall be subject to the licensing by local authorities required by G. L. c. 159, §§ 45-49. That contains no exception. None favorable to the plaintiff can rightly be implied. The amendment of G. L. c. 159, § 45, by St. 1925, c. 280, requiring license for the operation of motor vehicles on highways for carriage of passengers for hire, is also expressed in sweeping and unqualified terms. It would be impossible under the circumstances to read into it an exception in favor of the plaintiff.

The words of said § 11, upon which the plaintiff relies, namely, "the service and the facilities," can be given effective meaning without extending them into the field of operation of motor vehicles, which in every respect the Legislature thus far has subjected to regulations general in nature and not admitting exception in favor of the plaintiff. The further words of said § 11, exempting the trustees from "the approval, control or discretion of any other State board or commission," do not have the effect of exempting the plaintiff from obtaining the licenses required by G. L. c. 159, §§ 45-49, as amended by St. 1925, c. 280. There is nothing in *Cambridge* v. *Boston Elevated Railway*, 241 Mass. 374, which justifies such construction of § 11.

It may be noted in this connection that the same power in the same words is conferred upon the trustees operating the Boston Elevated Railway Company under Spec. St. 1918,

c. 159, § 2, as is conferred upon the defendants by said c. 188, § 11.   Similar contentions might be made in behalf of the power of those trustees.

The arguments as to hardship upon the petitioner and the holders of its securities arising from competition by railroads by virtue of St. 1925, c. 125, are founded on public expediency.   They would be appropriate respecting the enactment of legislation.   They are not controlling in the interpretation of existing statutes.

The conclusion follows that the approval of operation of motor vehicles by the plaintiff for the carriage of passengers on highways for hire, by the department of public utilities, does not relieve the trustees from securing licenses from the licensing boards of the several municipalities in which it is desired to operate motor vehicles.   The defendants cannot operate such motor vehicles without licenses from the local authorities.

*Bill   dismissed.*