JOHN L. POBIEGLO, executor,[1] & others[2] vs. MONSANTO
COMPANY & others.[3]

Suffolk. November 4, 1987. — April 11, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Limitations, Statute of. Negligence*, Wrongful death, Employer, Manufacturer. *Statute*, Construction. *Conscious Pain and Suffering*.

The so-called statute of limitations "discovery rule" did not apply in an action for wrongful death brought under G. L..c. 229, § 2, where, as a consequence of plaintiffs' good faith ignorance of grounds for a complaint, their action was commenced more than three years after the date of decedent's death. [114-118] LIACOS, J., with whom ABRAMS, J., joins, dissenting.

The so-called statute of limitations "discovery rule" did not apply in an action on behalf of a decedent for conscious pain and suffering brought under G. L. c. 229, § 6, and governed by G. L. c. 260, § 10, where, as a consequence of the plaintiffs' good faith ignorance of grounds for a complaint, their action was commenced more than three years after the date of the decedent's death, and more than two years after his executor posted a bond. [118-120] LIACOS, J., with whom ABRAMS, J., joins, dissenting; O'CONNOR, J., dissenting in a separate opinion.

QUESTIONS OF LAW certified to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Keith S. Halpern (Gail Strassfield with him) for the plaintiffs.*

*Marc E. Kasowitz* of New York & *Richard F. Faille* for Celanese Chemical Company, Inc.

*Robert P. Powers* for Monsanto Company, *Mark W. Pearlstein* for Union Carbide Corporation, *Samuel A. Marsella* for

---

[1] Of the estate of John I. Pobieglo.

[2] John L. Pobielgo, administrator of the estate of Doris Pobieglo, and Kathy Pobieglo.

[3] American Cyanamid Corporation, Celanese Chemical Company, Inc., E.I. du Pont de Nemours & Company, Inc., McKesson Corporation, Tenneco Resins, Inc., Union Carbide Corporation, and Wright Chemical Corporation.

E. I. du Pont de Nemours & Company, Inc., *Robert D. Canty* for McKesson Corporation & *Frank Yesu* for Wright Chemical Corporation, were present but did not argue.

*Robert M. Hacking* for American Cyanamid Corporation & *Thomas J. Sartory* for Tenneco Resins, Inc., eached joined in a brief.

LYNCH, J. This case comes before the court on certification from the United States District Court for the District of Massachusetts of two questions involving the applicability of the so-called discovery rule to claims for wrongful death and conscious pain and suffering arising from exposure to workplace chemicals. See S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).

The plaintiffs filed suit in the Superior Court in Hampden County on December 31, 1984, seeking to recover for the alleged wrongful death and conscious pain and suffering of John I. Pobieglo (decedent) and for their loss of consortium and loss of parental society. The claims relevant here, for wrongful death pursuant to G. L. c. 229, § 2 (1986 ed.), and for the decedent's conscious pain and suffering, pursuant to G. L. c. 229, § 6 (1986 ed.), were founded in theories of negligence, breach of express and implied warranties, and reckless conduct. The plaintiffs alleged that the decedent was exposed to formaldehyde materials and products while employed by the defendant, Monsanto Company (Monsanto), at its chemical plant near Springfield, Massachusetts, and that this exposure caused the decedent to contract cancer of the nasopharynx resulting in his death on July 22, 1979. The plaintiffs further alleged that (1) they remained in good faith ignorance of the existence of grounds for a complaint against the defendants until more than three years after the date of the decedent's death, and (2) they commenced this action within three years of the date they first discovered the existence of grounds for suit.

On or about January 30, 1985, Union Carbide Corporation on behalf of all the defendants removed the case to the United States District Court for the District of Massachusetts. On October 21, 1986, a judge in that court denied the defendants' motion to dismiss or for summary judgment as to those claims

challenged on statute of limitations grounds, adopting the report
and recommendation of the magistrate, inter alia, that there
was a reasonable likelihood that this court "would apply the
statute of limitations 'discovery rule' to actions brought under
the Massachusetts wrongful death and survival statutes."[4] At
the same time, the judge denied the plaintiffs' motion for
certification. However, on May 18, 1987, subsequent to our
decision in *Hallett* v. *Wrentham*, 398 Mass. 550 (1986), the
judge ordered certified the following questions of law: 1. "May
a discovery rule be applied in an action for wrongful death
brought under Mass. Gen. Laws ch. 229, § 2 where, as a
consequence of plaintiffs' good faith ignorance of the existence
of grounds for a complaint, the action was commenced more
than three years after the date of decedent's death?" 2. "May
a discovery rule be applied in an action for conscious pain and
suffering brought under Mass. Gen. Laws ch. 229, § 6 where,
as a consequence of plaintiffs' good faith ignorance of the
existence of grounds for a complaint, the action was com-
menced more than three years after the date of the decedent's
death, and more than two years after the executor of the dece-
dent's estate posted his bond?"

For the following reasons, we answer both certified questions
in the negative.

1. In pertinent part, G. L. c. 229, § 2 (1986 ed.), provides:
"An action to recover damages under this section shall be
commenced within three years from the date of death or within
such time thereafter as is provided by section four, four B,
nine or ten of chapter two hundred and sixty."

Relying principally on our opinions in *Gaudette* v. *Webb*,
362 Mass. 60 (1972), and *Olsen* v. *Bell Tel. Laboratories,
Inc.*, 388 Mass. 171 (1983), the plaintiffs urge us, in the
interest of fairness, to extend application of the discovery rule
to claims for wrongful death so as not to deprive the plaintiffs
of a remedy before they knew, or reasonably should have known,
that the decedent was harmed by the defendants' conduct. In

---

[4] As to Monsanto, the plaintiffs' claims for wrongful death and conscious
pain and suffering are barred by the exclusivity provisions of the workers'
compensation act. G. L. c. 152 (1986 ed.).

*Gaudette*, *supra* at 72, we held that the right to recover for wrongful death is of common law origin and that "statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G. L. c. 260, the general statute of limitations, and that they may be tolled by the various provisions of G. L. c. 260." The plaintiffs contend that there is no principle of distinction between modification of the wrongful death statute of limitations through a discovery rule and application of the minor tolling provisions of G. L. c. 260 (1986 ed.). Similarly, the plaintiffs argue that where, in a case involving *nonfatal* injuries caused by workplace exposure to a toxic substance, we applied a discovery rule to claims arising under G. L. c. 260, § 2A, we should not deny recovery merely because the injury alleged to have been caused by the defendants here was so serious as to result in death. In a case involving death, too, the plaintiffs contend, the principle that "a plaintiff should be put on notice before his claim is barred," *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980), warrants application of a discovery rule to the wrongful death statute.

Central to the plaintiffs' analysis of this evolving area of the law is the common law origin of the right to recover for wrongful death. Thus, the plaintiffs contend, where this is the view, a discovery rule has been uniformly applied despite explicit statutory language directing that the limitations period is to run "from death." E.g., *Eisenmann* v. *Cantor Bros.*, 567 F. Supp. 1347 (N.D. Ill. 1983); *Hanebuth* v. *Bell Helicopter Int'l*, 694 P.2d 143 (Alaska 1984); *Myers* v. *McDonald*, 635 P.2d 84 (Utah 1981).[5]

---

[5] The defendants argue that the Utah wrongful death statute is an accrual statute rather than a from death statute. The Supreme Court of Utah did not base its decision on this distinction. Instead, that court has held that "the [wrongful death] cause of action accrues at the time of death; hence, the two-year period begins to run at that time." *Matter of Estate of Garza*, 725 P.2d 1328, 1329 (Utah 1986). See also *Platz* v. *International Smelting Co.*, 61 Utah 342 (1922). The Utah court nevertheless applied a narrow exception to this rule based on the fact that the death itself was not discovered until after the statute had run. *Myers* v. *McDonald, supra.*

Conversely, the plaintiffs argue, courts of jurisdictions which do not recognize a nonstatutory right of action for wrongful death have reasoned that the lack of a nonstatutory right compelled strict construction of "from death" language, despite "harsh" results. See, e.g, *Cadieux* v. *International Tel. & Tel. Corp.*, 593 F.2d 142 (1st Cir. 1979) (interpreting Rhode Island law); *Knauer* v. *Johns-Manville Corp.*, 638 F. Supp. 1369 (D. Md. 1986); *Stiles* v. *Union Carbide Corp.*, 520 F. Supp. 865 (S.D. Tex. 1981); *Holzsager* v. *Warburton*, 452 F. Supp. 1267 (D.N.J. 1978); *Clark* v. *Prakalapakorn*, 8 Kan. App. 2d 33 (1982).

Here it is of no significance that the wrongful death claim has common law origins, since we are first concerned with the meaning of G. L. c. 229, § 2, which limits the right to bring such claims. Only if the statute is ambiguous, or couched in terms that suggest that we do so, do we look beyond the express statutory language.

The Legislature has unambiguously stated that a claim for wrongful death must be brought within "three years from the date of death." Application of a rule which would delay accrual until discovery would be in clear contravention of the legislative directive that the period of limitation runs from the date of death. Furthermore, it must be understood that the discovery rule grew out of the need to determine when a cause of action "accrued." When the Legislature limits the time within which suit can commence from the date of accrual, it leaves to the court the determination of the precise meaning of the term accrued.

At least as early as 1974, this court interpreted accrual language in c. 260 to incorporate the discovery rule. *Hendrickson* v. *Sears*, 365 Mass. 83 (1974). Since that time, the Legislature has amended the wrongful death statute of limitations at least twice and has retained the concept of limiting the time from the date of death thereby avoiding the accrual concept. See, e.g., St. 1981, c. 493, § 1; St. 1979, c. 164, § 1. Contrary to the plaintiffs' assertion that there is no principle of distinction between a discovery rule and application of the minor tolling provisions of G. L. c. 260, § 7, we see at least three important

distinctions. First, the wrongful death statute under considera-
tion in *Gaudette* was silent about tolling provisions. Second,
the discovery rule is a judicial creation whereas tolling rules
are themselves of legislative creation applicable to a wide range
of causes of action. Third, and perhaps most significant, appli-
cation of a minor tolling provision to the wrongful death statute
does not disturb the legislatively determined date of accrual,
the date of death. General Laws c. 260, § 7, merely provides
that the running of the limitations period will be suspended
"[i]f the person . . . is a minor . . . *when a right to bring an
action first accrues* . . ." (emphasis added).

We reiterate that "*Gaudette* does not stand for the proposition
that the requirements of the statute may be disregarded." *Hallett*
v. *Wrentham*, 398 Mass. 550, 555 (1986).[6] Although the right
is of common law origin, "the death statute specifies the pro-
cedure and recovery." *Id.* We cannot say that the result is
illogical or absurd. See *Grass* v. *Catamount Dev. Corp.*, 390
Mass. 551 (1983) (Legislature might reasonably choose to put
wrongful death claimant on different footing from one claiming
injury). Moreover, "arguments as to hardship . . . [are] appro-
priate respecting the enactment of legislation. They are not
controlling in the interpretation of existing statutes." *Klein* v.
*Catalano*, 386 Mass. 701, 713 (1982), quoting *Eastern Mass.
St. Ry.* v. *Trustees of E. Mass. St. Ry.*, 254 Mass. 28, 33
(1925). We, therefore, answer that, where the Legislature has
specifically provided that claims for wrongful death must be
brought within three years from the date of death, it would be

---

[6] The plaintiffs contend that in *Fidler* v. *E.M. Parker Co.*, 394 Mass.
534 (1985), we applied a discovery rule to a nonaccrual type statute which
explicitly states when the limitations period begins to run, G. L. c. 106,
§ 2-318. The plaintiffs' reliance on *Fidler* is misplaced. The issue in *Fidler*
was whether the doctrine of collateral estoppel precluded the plaintiffs from
relitigating the issue whether the statute of limitations had run. First, we
held that "[t]he Federal court's judgment applying the same measure of
accrual [as in negligence claims] reflects a reasonable interpretation and
application of Massachusetts law." *Id.* at 545. Second, where G. L. c. 106,
§ 2-318, provides that the statute runs from "the date the injury and damage
occurs," we view this language as potentially ambiguous language requiring
judicial interpretation, rather than specific, "nonaccrual" type language, as
is contended by the plaintiffs.

inappropriate for this court to vitiate that legislative determination and apply a discovery rule to claims brought pursuant to G. L. c. 229, § 2.

2. It is well settled that, "[a]lthough G. L. c. 229, § 6 . . . permits the joinder of separate counts for death and for conscious suffering in a single action, they are separate causes of action." *Gaudette* v. *Webb*, 362 Mass. 60, 62 (1972). Claims for conscious pain and suffering survive by virtue of G. L. c. 228, § 1. *Id.* That claims for wrongful death and for conscious pain and suffering are premised upon different theories of recovery and are intended for separate categories of beneficiaries is recognized in the legislative directive of G. L. c. 229, § 6, that "damages . . . recovered for conscious suffering resulting from the same injury . . . shall be held and disposed of by the executors or administrators as assets of the estate of the deceased." It follows, therefore, that the plaintiffs' claims for the decedent's conscious suffering are governed by G. L. c. 260, § 10.

In pertinent part, G. L. c. 260, § 10, provides: "If a person entitled to bring or liable to any action before mentioned dies before the expiration of the time hereinbefore limited, or within thirty days after the expiration of said time, and the cause of action by law survives, the action may be commenced by the executor or administrator at any time within the period within which the deceased might have brought the action or within two years after his giving bond for the discharge of his trust . . . ."

Reasoning that, had the decedent survived, a discovery rule would have applied to his claims for conscious pain and suffering, *Olsen* v. *Bell Tel. Laboratories, Inc.*, *supra*, the plaintiffs argue that we should apply a discovery rule under G. L. c. 260, § 10, on the basis of the following principle: "A survivor takes the rights of the decedent — no more *and no less*. Therefore if the decedent would have had a cause of action during his lifetime, but for the invidious nature of his disease and his inability to link the injury to the wrongdoer, then that cause of action, when discovered, should survive his death." *Eisenmann* v. *Cantor Bros.*, 567 F. Supp. 1347, 1354 (N.D. Ill.

1983). Accord *White* v. *Johns-Manville Corp.*, 103 Wash. 2d 344, 360 (1985). The defendants, on the other hand, argue that the survival statute merely permits a personal representative to initiate a cause of action which has already accrued to the deceased before death. See, e.g., *McDaniel* v. *Johns-Manville Sales Corp.*, 511 F. Supp. 1241 (N.D. Ill. 1981); *Trimper* v. *Porter-Hayden*, 305 Md. 31 (1985); *Pastierik* v. *Duquesne Light Co.*, 514 Pa. 517 (1987); *Anthony* v. *Koppers Co.*, 496 Pa. 119 (1981).[7]

General Laws c. 260, § 10, was enacted long before this court's recognition of the discovery rule. It may be, therefore, that the statutory language does not provide us with a sufficient answer to the question at hand. Nevertheless, that section refers only to claims which the decedent was "entitled to bring." In *Sliski* v. *Krol*, 361 Mass. 313, 315 (1972), we interpreted this language to refer "to cases where the right of action accrued during a lifetime of decedent." Again it may be argued that *Sliski* has limited significance here since it was decided before our recognition of the discovery rule. Policy considerations, however, lead us in the same direction. To delay accrual of a claim until the decedent's personal representative might discover the cause of injury would create a situation where "there seldom would be a prescribed and predictable period of time after which a claim would be barred." *Olsen* v. *Bell Tel. Laboratories, Inc.*, *supra* at 175. The application of a postdeath discovery rule to survival actions would produce "an unacceptable imbalance between affording plaintiffs a remedy and providing defendants the repose that is essential to stability in human affairs." *Id*. Furthermore, we are guided by our answer to the first question and the legislative decree that wrongful death actions must be brought within three years of death. There is no apparent reason to apply a common law rule that would permit claims for conscious suffering to be brought under the discovery rule by the decedent's representatives long

---

[7] But compare *Trimper* v. *Porter-Hayden, supra* at 42, in which that court stated: "But the injured party need not know that he has suffered a legally cognizable injury which has resulted in harm in order to have a complete cause of action."

after death but to limit a death action to a much shorter time. We answer question 2 negatively and, therefore, that, under G. L. c. 260, § 10, we would not apply a discovery rule to a cause of action for conscious suffering commenced more than three years after the date of the decedent's death, and more than two years after the executor of the decedent's estate posted his bond.

We answer questions 1 and 2, "No."


LIACOS, J. (dissenting, with whom Abrams, J., joins). I join my brother, Justice O'Connor, in his dissent to the court's opinion as to certified question no. 2. I write separately to express my disagreement with the court's view, as well as Justice O'Connor's, as to the proper response to certified question no. 1.

The court today holds that the discovery rule is inapplicable to actions arising under the wrongful death statute, G. L. c. 229, § 2 (1986 ed.). I disagree. The result in this case is incongruent with our previous decisions and is fundamentally unfair.

In my view, this court should not engage in narrow and formalistic legal reasoning so as to deny the plaintiff the ability to bring suit. In the words of our sister court in Utah, such an approach places the law "in the untenable position of having created a remedy for the plaintiff[ ] and then barring [him] from exercising it before [he] had any practical opportunity to do so." *Myers* v. *McDonald*, 635 P.2d 84, 87 (Utah 1981). Accord *Eisenmann* v. *Cantor Bros.*, 567 F. Supp. 1347, 1352 (N.D. Ill. 1983), quoting *Matter of Johns-Manville Asbestosis Cases*, 511 F. Supp. 1235, 1238 (N.D. Ill. 1981) ("we would have the anomaly of an action [for wrongful death] being barred before the cause of action even arose").

The thoughtful and well-reasoned opinion of the Supreme Court of Alaska in *Hanebuth* v. *Bell Helicopter Int'l*, 694 P.2d 143 (Alaska 1984), is more persuasive and compelling than

the response our court gives to question no. 1.[1] The Alaska court, like our own, had, several years earlier, recognized a common law right of action for wrongful death and had allowed the statutory period of limitations for that action to be tolled. *Haakanson* v. *Wakefield*, 600 P.2d 1087 (Alaska 1979). See *Gaudette* v. *Webb*, 362 Mass. 60 (1972).[2] In *Hanebuth, supra* at 145, the Alaska court rejected the contention that the use of "from death" rather than "accrual" language expressed a

[1] The language of the Alaska wrongful death statute interpreted in *Hanebuth, supra*, Alaska Stat. § 09.55.580 (1987), is similar to the Massachusetts statute, providing in relevant part: "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had the person lived, against the latter for an injury done by the same act or omission. The action shall be commenced within two years after the death . . . ."

General Laws c. 229, § 2 (1986 ed.), provides in relevant part: "A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages . . . . An action to recover damages under this section shall be commenced within three years from the date of death or within such time thereafter as is provided by section four, four B, nine or ten of chapter two hundred and sixty."

[2] *Haakanson, supra* at 1092 n.11, relied, in part, on our decision in *Gaudette, supra*. There, we held that the right to recover for wrongful death is of common law origin. Consequently, the statutes governing wrongful death actions are no longer viewed as creating a right to recovery. Rather, they prescribe the form of suit, the damages recoverable, and, like any statute of limitations, the period of time within which actions may be commenced. *Gaudette, supra* at 71.

Our decision in *Hallett* v. *Wrentham*, 398 Mass. 550, 555 (1986), merely reaffirmed the distinction that "the death statute specifies the procedure and recovery" but does not create the underlying right of action. The court notes correctly *Hallett's* emphasis that "*Gaudette* does not stand for the proposition that the requirements of the statute may be disregarded." *Id.* We were referring, however, to the necessity for the action to be brought "by a personal representative on behalf of the designated categories of beneficiaries." *Id.*, quoting *Gaudette, supra*. The matter arose because the plaintiffs claimed that, under *Gaudette*, they could sue for wrongful death under the statute *or* proceed with independent, common law claims for their father's death. We rejected the claim that *Gaudette* permitted the statutory procedures on filing to be ignored. *Hallett* in no way touched upon, nor limited, the instruction that the statute of limitations in G. L. c. 229, § 2, is to be construed like any other. *Gaudette, supra* at 71.

clear legislative intent to restrict such actions more severely than other tort actions. Indeed, the difference in language was "not necessarily significant because [in *Haakanson*] the application of the minor tolling rule was not barred by the 'from death' language." *Id.* at 146. The *Hanebuth* court recognized that two key propositions flowed from *Haakanson*: first, that it is unnecessary narrowly to construe wrongful death statutes as being in derogation of common law;[3] second, that wrongful death statutes merely deal with the form of remedy available. They do not bar the underlying right of action. *Hanebuth, supra.* The same conclusions apply under *Gaudette.*

In this context, the Alaska court concluded that the "discovery rule does apply to the death act because of the fundamental fairness of the rule and, like the minor tolling rule, because it is consistent with the purposes of the act. . . . The same reasoning, founded on basic justice, that has led us to adopt the discovery rule generally is present in wrongful death actions." *Hanebuth, supra* at 146-147. The court noted that to hold otherwise would provide a windfall to tortfeasors whose conduct was so grievous as to cause death, while other tortfeasors, whose conduct fortuitously only caused injury, would be held liable. *Id.* at 147 & n.12.

We should decline, as did the Alaska court, to "attribute an intent to adopt such an irrational result to the legislature." *Id.* at 147. Recently, this court found itself in a similar posture. We unanimously refused to "attribute to Congress an intention, and certainly not a clear intention, to dictate an absurd result." *Apkin* v. *Treasurer & Receiver Gen.*, 401 Mass. 427, 436 (1988) (holding Federal legislation, in absence of clear congressional intent, does not preempt State constitutional mandate for judges' retirement at age seventy). We refused to read the Fed-

---

[3] Indeed, the court emphasized that the death statute should be construed liberally, since it is remedial in nature and "designed to compensate those who have suffered a direct loss because of the tortiously caused death of a benefactor." *Hanebuth, supra* at 145. See *Boston* v. *Hospital Transp. Servs., Inc.*, 6 Mass. App. Ct. 198, 201-202 (1978) (remedial legislation should be construed "so as to accomplish more fully the remedial purpose which prompted its passage").

eral legislation at issue "in a vacuum," whatever the legislation "may say if read literally." *Id.* at 436, 435. I would hold legislation promulgated by the General Court to no lesser standard.

There is no clear legislative intent illuminating the boundaries of this statute. The court's emphasis on the Legislature's use of a nonaccrual style of language is misplaced. The wrongful death act is not a statute of repose that "limits the time within which an action may be brought and is not related to the accrual of any cause of action." *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). Under such statutes "[t]he injury need not have occurred, much less have been discovered" within the time frame. *Id.* Statutes of repose evince a clear legislative intent for an absolute time bar.

The wrongful death act, however, affects only the form of the remedy and not the underlying right. *Gaudette, supra* at 71. It is a statute of limitations, which "normally governs the time within which legal proceedings must be commenced after the cause of action accrues." *Klein* v. *Catalano, supra.* The traditional purpose of a statute of limitations is to "require the assertion of claims within a specified period of time after notice of the invasion of legal rights." *Urie* v. *Thompson*, 337 U.S. 163, 170 (1949). While repose may be a goal of a limitations statute, previous cases adopting the discovery rule illustrate that the time bar is not absolute. See, e.g., *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 174-175 (1983), and cases cited. When knowledge of the tortious wrong is, within the statutory time frame, unknown and unknowable, courts have applied a discovery rule to prevent legislation from affording merely "a delusive remedy." *Urie, supra* at 169.

Where the Legislature intended an absolute time bar on certain actions, it has included language of repose. See, e.g., G. L. c. 260, §§ 2B, 4, and 4B (1986 ed.). In other instances, the benefits of a discovery rule have been conferred legislatively coupled with specific time limitations running from the date of discovery. See, e.g., G. L. c. 260, §§ 2C-2D (1986 ed.). In the absence of such legislative restrictions or limitations regarding G. L. c. 229, § 2, this court is free to apply the

traditional judicial doctrine of a discovery rule. Application of the rule in this case would ensure that all plaintiffs for whom the Legislature intended to provide a remedy for tortiously caused wrongful deaths would be placed on an equal footing to commence an action upon notice of a wrong.

Finally, I observe that the court relies on several cases which support a contrary result. The court purports to rest its views on *Grass* v. *Catamount Dev. Corp.*, 390 Mass. 551 (1983). In that case we commented that "[t]he Legislature might reasonably choose to put a wrongful death claimant on a different footing from one claiming injury . . . [because] [t]he latter claims are likely to be myriad in number . . . [while] [d]eath claims, on the other hand, being drastic in the extreme and relatively infrequent, need not be constrained" in the same manner. *Id.* at 553, quoting *Gallant* v. *Worcester*, 383 Mass. 707, 714 (1981). This language does not support the court's position because *Grass* and *Gallant* actually stand for the proposition that the Legislature has intended to afford liberal protection to claimants under the wrongful death act. Also, cases such as *Klein*, which the court cites, *ante* at 117, are cases in which we were interpreting statutes where clear-cut indications of legislative intent existed. *Klein*, as discussed above, involved a statute of repose. We thus believed that there was an indisputable legislative intent to abrogate a tort remedy after a time certain. See *id.* at 712. Similarly, in *Eastern Mass. St. Ry.* v. *Trustees of the E. Mass. St. Ry.*, 254 Mass. 28, 31-33 (1925), this court concluded that, given the chronological development of the statutory provisions at issue, the Legislature could not have been thought to have intended certain seemingly broad grants of power in one provision so as to exempt the plaintiff from the licensure requirements of another provision. These cases are simply inapposite to the one at bar.

The plaintiff should not be barred from commencing a wrongful death action if he could not have known of the cause of action within the time limitation. Neither fairness nor a proper reading of legislative intent warrants such a conclusion. Accordingly, I dissent.

O'CONNOR, J. (dissenting in part). I agree with the court's answer to the first certified question. General Laws c. 229, § 2, is clear. Claims for wrongful death must be brought within three years after the death occurs.

The second certified question is as follows: "May a discovery rule be applied in an action for conscious pain and suffering brought under [G. L. c. 229, § 6], where, as a consequence of plaintiffs' good faith ignorance of the existence of grounds for a complaint, the action was commenced more than three years after the date of the decedent's death, and more than two years after the executor of the decedent's estate posted his bond?" I do not agree that the correct answer to that question is "no." I would answer that, whether a discovery rule applies to the conscious pain and suffering claim depends, not on the state of mind of either plaintiff,[1] but on whether, regardless of the date of the decedent's death, the decedent's disease and its cause were inherently unknowable until three years before this action was commenced.

In several cases, this court and the Appeals Court have recognized the "principle that a plaintiff should be put on notice before his or her claim is barred by the passage of time. Thus, the discovery rule has been applied to causes of action based on 'inherently unknowable' wrongs." *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 175 (1983), quoting *Friedman* v. *Jablonski*, 371 Mass. 482, 485 (1976). Under the discovery rule, "certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982). *Gore* v. *Daniel O'Connell's Sons*, 17 Mass. App. Ct. 645, 647 (1984). *Zampell* v. *Consolidated Freightways Corp.*, 15 Mass. App. Ct. 954 (1983).

The purpose of the court-made discovery rule is to implement the legislative intent. The rule corrects the unfairness that would

---

[1] The plaintiffs are John L. Pobieglo, executor of the estate of his father, John I. Pobieglo, and administrator of the estate of his mother, Doris Pobieglo, and Kathy Pobieglo, daughter of John I. Pobieglo and Doris Pobieglo.

result from the limitation period beginning to run against an injured party before his cause of action is knowable. Thus, if John I. Pobieglo, the deceased, had survived to the present, he would have been entitled to bring an action to recover for his personal injuries caused by the defendants' negligence any time after the injuries were incurred, but he would not have been required to bring the action until three years after the wrong became knowable. If the deceased himself had brought this action on December 31, 1984, the date on which the action was in fact brought by the personal representative, the action would have been timely had the deceased's disease and its cause been inherently unknowable until three years before that date. If the disease and its cause were knowable before December 31, 1981, the action would have been time-barred.

This action was brought, not by the deceased, but by the executor of his estate. As the court notes, *ante* at 118, " '[a]lthough G. L. c. 229, § 6 . . . permits the joinder of separate counts for death and for conscious suffering in a single action, they are separate causes of action.' *Gaudette* v. *Webb*, 362 Mass. 60, 62 (1972)." A cause of action for conscious suffering, like any other cause of action for personal injuries, is subject to the three-year limitation of actions provisions of G. L. c. 260, § 2A. *Id.* It survives the death of the injured party, G. L. c. 228, § 1 (2) (*a*), and vests in the personal representative. *Id.* at 63.

General Laws c. 260, § 10, provides: "If a person entitled to bring . . . any action before mentioned [a personal injury tort action, as here; see § 2A] dies before the expiration of the time hereinbefore limited [before the expiration of three years after the cause of action accrues; see § 2A], or within thirty days after the expiration of said time, and the cause of action by law survives [a cause of action for personal injuries survives; see G. L. c. 228, § 1 (2) (*a*)], the action may be commenced by the executor or administrator at any time within the period within which the deceased might have brought the action or within two years after giving his bond for the discharge of his trust . . . ."

It is clear that, with respect to surviving causes of action, the Legislature's objective in enacting G. L. c. 260, § 10, was to give the estate of the deceased at least as much time for bringing an action as the deceased would have had if he had survived. Thus, if a person with a surviving cause of action dies while an action brought by him would still be timely, or within thirty days thereafter, his personal representative "inherits" the time denied to the deceased by reason of his death. Also, if the time for bringing an action has not expired more than thirty days before the death of the deceased, the personal representative has two years from the posting of his bond within which to commence the action. Whether G. L. c. 260, § 10, provides time to the personal representative to bring an action, and if so, how much time, depends on whether there was time remaining to the deceased thirty days before his death. In turn, whether there was time remaining to the deceased thirty days before his death requires application of the discovery rule as discussed above.

Examples might be helpful. If a person dies six months after his disease and its cause have become knowable, his personal representative would have either two years and six months from the date of the death to bring an action (because the deceased would have had that time) or he would have two years from the date of posting his bond, whichever computation results in the longer period. If a person dies two years after the wrong becomes knowable, the personal representative would "inherit" only one year from the date of death, but he nevertheless would have two years from the posting of his bond. If a person dies before the disease and its cause are knowable, the personal representative's allowable time begins to run when the disease and its cause become knowable because that is the time that would have been available to the deceased if he had survived. In any event, given those circumstances, the personal representative would have at least two years from the posting of his bond.

General Laws c. 260, § 10, addresses the situation where "a person entitled to bring . . . any action" dies before the period of limitation has expired. I would reject the argument

that, if a person dies before his disease and its cause are knowable, he was not "entitled" to bring an action before he died and therefore c. 260, § 10, is inapplicable. Such a construction frustrates the overriding purpose of the statute, which is to put the estate of the deceased as nearly as possible in the position the deceased would have been in if he had lived. There is no inconsistency in saying that a person who has been injured by the fault of another is *entitled* to bring an action for his injury although he is unaware of it, but he is not *required* to bring the action until a prescribed time after the wrong becomes knowable.

Certified question number 2 inquires about the applicability of the discovery rule "where . . . the action was commenced more than three years after the date of the decedent's death, and more than two years after the executor of the decedent's estate posted his bond." Just as the period for commencing a wrongful death action begins with the death, because the Legislature has so provided, the provision of two years from the posting of the executor's bond, as required by G. L. c. 260, § 10, can only begin with the posting of the bond. I would answer, however, that if the wrong of which the plaintiffs complain was inherently unknowable at least until December 31, 1981, three years before the action was brought, the action was timely.

Of course, applying the discovery rule to a claim for conscious suffering arising out of a wrong that is inherently unknowable until after the injured person's death will usually result in the action to recover for such injury being viable for a longer time (perhaps much longer) than is a claim for that person's wrongful death. If that lack of symmetry is thought by the Legislature to be undesirable, its correction is for that body. If the Legislature chooses to act, it may enact legislation providing that claims for conscious suffering must be brought within three years after the injured person's death. But, it is also open to the Legislature, if it chooses to act, to enact legislation providing that a wrongful death action must be brought within three years after the wrong has become inherently knowable, thus synchronizing claims for wrongful death

with claims for conscious suffering, which is the result Justice Liacos contends is correct on the basis of the present statute. It is my view that the court should not create its own "statute" of limitations by arbitrarily announcing that a cause of action for conscious suffering arises no later than the injured person's death even though, at that time, the cause of action is not inherently knowable and would not have accrued if the injured person had survived.