Hinkle, J.
The plaintiff filed this wrongful death action following the death of 19-year-old William J. Goulet (“Goulet”) in a fire in an apartment owned and managed by the defendants. The defendants filed a third-party complaint seeking contribution from Depot Café, Inc. of Boston (“Depot"). This matter is before the court on the defendants’ motion for partial summary judgment under Mass.R.Civ.P. 56. In addition, Depot moves for summary judgment on the third-party complaint. For the reasons discussed below, the defendants’ motion for partial summary judgment is ALLOWED, and Depot’s motion for summary judgment is DENIED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
At all times relevant to this action, Goulet resided in the rear basement apartment of a 10-unit apartment building located at 51 Philips Street in Boston. Defendant Actionvest Management Corp. (“Actionvest”) managed the building, and defendant Flume Nominee Trust (“Flume”), a real estate trust, owned the building. Defendants David Brody (“Brody”) and Paul Biron (“Biron”) are the trustees of Flume.
During Goulet’s tenancy, there was no smoke detector in his apartment. A fixed security grate blocked the rear window in Goulet’s bedroom, and there was no safety latch to remove the grate so that the window could be used as a means of egress from the apartment.
In the late evening hours of June 27,1998 and early morning hours of June 28, 1998, 19-year-old Goulet, 20-year-old Catherine Dabilis (“Dabilis”), Jamie Verboot ("Verboot”) and Salil Darji (“Darji”) were at the Upstairs Lounge, a tavern and nightclub located at 65-71 Causeway Street in Boston and operated by Depot. According to Depot owner Joseph Bottari (“Bottari”), the Upstairs Lounge never had “18 plus nights” at which individuals between the ages of 18 and 21 were admitted but not allowed to consume alcoholic beverages. However, Goulet often frequented the Upstairs Lounge, and Tyler Newman observed Goulet drinking there on at least 10 occasions. Darji, also a regular customer at the Upstairs Lounge, never observed anyone refused service of alcohol because they were underage and never observed anyone be “shut off because they had had too many drinks. Bottari is not familiar with the TIPS certification course for bartenders. Most of the time, friends and family of Bottari worked at the bar for free, and Bottari sometimes asked one of the young customers to help out and pick up bottles for recycling, usually in exchange for $10. On several occasions, Goulet helped clean up bottles at the Upstairs Lounge.
At approximately 2:20 a.m. on June 28, Goulet, Dabilis, Verboot and Darji left the Upstairs Lounge and walked to Goulet’s apartment at 51 Philips Street. *74 Darji did not see Goulet drink any alcohol at the Upstairs Lounge but assumed that he had been drinking and believed that Goulet was intoxicated because he was staggering as they walked back to the apartment. Darji himself was intoxicated and staggering a little, and Darji believed that Dabilis was also intoxicated. At the apartment, everyone except Goulet had something to eat and drink, although no further alcoholic beverages were consumed. Darji observed Goulet smoking cigarettes in the apartment. Goulet lay down on the day bed and appeared lethargic, but Darji did not observe him fall asleep or pass out. After about a half hour, Darji and Verboot left the apartment and took a cab home.
Sometime after 3:00 a.m., Dabilis took Goulet’s shoes off and tried to put him to bed, but Goulet got up and walked Dabilis out of the apartment to the street, where her father was waiting to drive her home. Dabilis was not concerned about Goulet’s physical condition, but did not want him to smoke because he looked like he was about to fall asleep and she had a “bad feeling” about it. As Goulet walked Dabilis out, he had a cigarette in his hand, which Dabilis convinced him not to light. Dabilis did not observe Goulet drinking at the Upstairs Lounge earlier, but assumed that he had been drinking.[3]
In the early morning of June 28, 1998, Goulet died in a lire in his apartment after suffering smoke inhalation and severe third and fourth degree burns over 60 percent of his body. The Boston Fire Department determined that the fire started in the rear bedroom of the apartment in the area of Goulet’s bed. The Fire Department did not find any smoke detectors in the apartment and noted that a fixed security grate blocked the rear window of the apartment, preventing its use as a means of egress. According to the autopsy report, Goulet’s blood alcohol level was .106.
Counts I through v. and Counts XII through XVII of the plaintiffs Second Amended Complaint make wrongful death claims under G.L.c. 229, §§2 and 6, alleging that Actionvest, Flume, Brody and Biron were negligent in failing to provide reasonable fire protection in Goulet’s apartment. Plaintiff seeks to recover damages for Goulet’s conscious pain and suffering as well as punitive damages for Actionvest’s gross negligence. Counts VI, VII, XVTII and XIX of the Second Amended Complaint seek to recover for Goulet’s conscious pain and suffering, alleging that the defendants breached the warranty of habitability by providing defective fire protection devices and means of egress from the apartment. Counts VIII, IX, XX and XXI assert wrongful death claims against the defendants under G.L.c. 229, §2 based on breach of the warranty of habitability. Finally, Counts X, XI, XXII and XXIII allege that the defendants’ breach of the warranty of habitability constitutes an unfair and deceptive practice in violation of G.L.c. 93A, §9.
Actionvest, Flume, Brody and Biron filed an Amended Third-party Complaint seeking contribution from Depot under G.L.c. 23IB, alleging that Depot negligently served Goulet alcoholic beverages on June 27-28 and that, while intoxicated, Goulet passed out while smoking a cigarette in bed, causing the fatal fire.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. Actionvest, Flume, Brody and Biron’s Motion for Partial Summary Judgment
Actionvest, Flume, Brody and Biron contend that they are entitled to judgment as a matter of law on Counts VI, VII, VIII, IX, X, XI, XVIII, X3X, XX, XXI, XXII and XXIII of the Second Amended Complaint because Massachusetts does not recognize a claim of wrongful death based on breach of the warraniy of habitability. This appears to be a matter of first impression in the Commonwealth.
The wrongful death statute, General Laws Chapter 229, provides in relevant part:
A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, or (3) operates a common carrier of passengers and by his negligence causes the death of a passenger, or (4) operates a common carrier of passengers and by his willful, wanton or reckless act causes the death of a passenger under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, or (5) is responsible for a breach of warranty arising under Article 2 of chapter one hundred and six which results in injury to a person that causes death, shall be liable in damages . . .
G.L.c. 229, §2 (2000).[4]
Although the right to recover for wrongful death is of common law origin, such recovery is subject to the *75 provisions of Chapter 229, which sets forth the exclusive procedural remedy for recovery of wrongful death damages in a civil action. Owen v. Meserve, 381 Mass. 273, 275 (1980), cert. den., 449 U.S. 1082 (1981); Gaudette v. Webb, 362 Mass. 60, 71 (1972); Peerless Ins. Co. v. Hartford Ins. Co., 48 Mass.App.Ct. 551, 554 (2000). Chapter 229, section 2 limits the right to bring claims for wrongful death, and the court looks beyond the express statutory language only if the statute is ambiguous or couched in terms that suggest the court should do so. Pobieglo v. Monsanto Co., 402 Mass. 112, 116 (1988).
Thus, where a prior version of G.L.c. 229, §2 did not explicitly provide for recovery for death arising from a contractual breach of warranty, the Supreme Judicial Court concluded that a plaintiff could not bring a statutory wrongful death claim against an automobile dealer based on an allegedly defective power steering unit. See Necktas v. General Motors Corp., Pontiac Division, 357 Mass. 546, 549-50 (1970). In response to this decision, in 1973 the Legislature amended G.L.c. 229, §2 to allow wrongful death recovery for breach of warranty in product liability cases. See Back v. Wickes Corp., 375 Mass. 633, 639 n. 4 (1978).
The present version of G.L.c. 229, §2 does not include breach of the warranty of habitability as one of the enumerated grounds for a wrongful death claim. “A statute cannot be extended by construction or enlargement beyond its fair import. If it does not reasonably include a right of action, none can be implied. The argument of hardship or unintentional omission is not enough. Nor is a statute enlarged because it does not give a remedy for something of more flagrant character than that to which it applies.” Foynes v. New York Central R.R., 276 Mass. 89, 91 (1931). Notably, the Legislature has amended Chapter 229, section 2 numerous times without adding a right to recover for breach of warranty of habitability. Therefore, in light of the plain language of the statute, this Court concludes that a cause of action for wrongful death based on breach of the warranty of habitability is not cognizable in Massachusetts.[5] Cf. Pobieglo v. Monsanto Co., 402 Mass. at 116. Accordingly, the defendants are entitled to judgment as a matter of law on Counts VIII, IX, XX and XXI of the Second Amended Complaint, which assert claims under G.L.c. 229, §2 based on breach of the warranty of habitability.
The defendants further contend that they are entitled to judgment as a matter of law on Counts VI, VA, XVIII and XIX, which seek to recover for Goulet’s conscious pain and suffering based on the warranty of habitability. Chapter 229, §6 provides in relevant part:
In any civil action brought under section two or five A, damages may be recovered for conscious suffering resulting from the same injury, but any sum so recovered shall be held and disposed of by the executors or administrators as assets of the estate of the deceased.
G.L.c. 229, §6 (2000). A claim under section 6 is a separate cause of action from a wrongful death claim under section 2. Pobieglo v. Monsanto Co., 402 Mass. at 118. Nonetheless, damages under section 6 are tied to “the same injury” that forms the basis of a statutory wrongful death claim under section 2. Given that section 2 does not permit a wrongful death claim based on breach of the warranty of habitability, there can be no statutory claim for conscious pain and suffering under section 6 for such a breach. Cf. Pobieglo v. Monsanto Co., 402 Mass. at 118-19 (declining to apply common law discovery rule to claim for conscious pain and suffering under G.L.c. 229, §6 where statute does not allow for application of the discovery rule to wrongful death claim under §2).
Further, because Chapter 229 is the exclusive procedural remedy for the recovery of damages in cases of death, the plaintiff cannot recover for Goulet’s conscious pain and suffering through a common law breach of warranty claim. See Hallett v. Wrentham, 398 Mass. 550, 554-56 (1986) (denying common law claim for wife and minor children’s loss of consortium and parental society because G.L.c. 229 provides exclusive remedy); Owen v. Meserve, 381 Mass. at 275 (denying common law claim for wrongful death and conscious pain and suffering based on negligence of railroad because G.L.c. 229 allows recovery by trespasser only for wflful, wanton or reckless conduct). Accordingly, the defendants are entitled to judgment as a matter of law on Counts VI, VII, XVAI and XIX of the Second Amended Complaint.
Finafly, because the Chapter 93A claims asserted in Counts X, XI, XXA and XXIII are based solely on the defendants’ alleged breach of the warranty of habitability, those claims fail as wefl. See Dulgarain v. Stone, 420 Mass. 843, 853 (1995) (where substantive tort claim fails as a matter of law, so does derivative 93A claim); Rosario v. M.D. Knowlton Co., 54 Mass.App.Ct. 796, 803 (2002) (granting summary judgment on 93A claim premised on breach of warranty claims which were barred as a matter of law by statute of repose).
A. Depot’s Motion for Summary Judgment on the Amended Third-party Complaint
Depot moves for summary judgment on the Amended Third-party Complaint for contribution under G.L.c. 23IB on the ground that the defendants have no reasonable expectation of demonstrating that Goulet was visibly intoxicated at the time he was served alcohol at the Upstairs Lounge. Depot relies on the well-established principle that a tavern keeper does not owe a duty to refuse to serve liquor to an intoxicated patron unless the tavern keeper knows or reasonably should have known that the patron is intoxicated. See Douillard v. LMR, Inc., 433 Mass. 162, 165 (2001); Cimino v. Milford Keg, Inc., 385 Mass. 323, 327 (1982). Thus, where liability is premised on the *76 service of alcohol to an intoxicated patron, the plaintiff must come forward with either direct or circumstantial evidence that the patron’s intoxication was apparent at the time of service. Douillard v. LMR, Inc., 433 Mass. at 165.
In this case,- however, service to a visibly intoxicated Goulet is not the only basis for Depot’s potential liability and the defendants’ contribution claim. In Massachusetts, negligence on the part of a seller of alcoholic beverages may be shown by the sale of alcohol to a minor in violation of G.L.c. 138, §34, even if the minor is not intoxicated at the time of the sale. Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 133-35 (1996); Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. 6, 10 (1983). The summary judgment record reveals a disputed issue of material fact with respect to whether the employees/agents of Depot were on notice that Goulet was under the legal age for consuming alcohol and whether they failed to use reasonable care to refrain from selling or furnishing alcoholic beverages to him. Cf. Wiska v. St. Stanislaus Social Club, Inc., 7 Mass.App.Ct. 813, 818 (1979).
Depot further moves for summary judgment on the ground that the defendants have no reasonable expectation of proving that the service of alcohol to Goulet was the proximate cause of his death. Where a seller of alcoholic beverages fails to exercise due care and sells alcohol to a minor, it is responsible for all proximately caused injuries. Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. at 11. Chapter 138, section 34 prohibits the sale of alcohol to minors, for both their own protection and that of the public, because the Legislature recognized “their very special susceptibilities and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages.” Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. at 11. See also Tobin v. Norwood Country Club, Inc., 422 Mass. at 136. The vendor need not foresee the particular kind of harm which might occur from its negligent sale of alcohol to a minor, so long as the harm is reasonably foreseeable. Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. at 12; Cimino v. Milford Keg, Inc., 385 Mass. at 330-32.
Depot argues that Goulet’s falling asleep or passing out with a lit cigarette, causing a fire, is an intervening act which was not a reasonably foreseeable consequence of serving him alcohol. Questions of proximate cause and intervening cause are generally left to the jury for its factual determination, and reasonable foreseeability may properly be decided as a question of law only where the harm suffered, although within in the range of human experience, is sufficiently remote in everyday life that no rational view of the evidence could support liability. Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. at 12; Westerback v. Harold F. LeClair Co., Inc., 50 Mass.App.Ct. 144, 146, rev. den., 432 Mass. 1111 (2000). Our society has recognized that the consumption of alcohol impairs one’s judgment, and that minors are particularly susceptible to impairment and poor judgment. See Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. at 11; Sweenor v. 162 State Street, Inc., 361 Mass. 524, 527 (1972). On the present summary judgment record, a rational jury could conclude that Goulet’s intoxication was a substantial legal factor in bringing about the fire and his own death. See Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. at 14. Cf. Westerback v. Harold F. LeClair Co., Inc., 50 Mass.App.Ct. at 146-48 (concluding as matter of law that rape of drunken patron who had been negligently served alcohol was not reasonably foreseeable where it occurred off-premises by assailants who had no connection to the tavern). Accordingly, Depot is not entitled to judgment as a matter of law on the Amended Third-party Complaint.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants Actionvest, Flume, Brody and Biron’s motion for summary judgment on Counts VI, VII, VIII, IX, X, XI, XVIII, XIX, XX, XXI, XXII and XXIII of the Second Amended Complaint is ALLOWED. It is further ORDERED that Depot Café, Inc. of Boston’s motion for summary judgment on the Amended Third-party Complaint is DENIED.

On February 8, 1999, Dabilis told a private investigator for the plaintiff that she observed Goulet drink approximately five beers at the Upstairs Lounge on June 27-28, 1998. At her deposition on September 5, 2001, Dabilis testified that in stating that Goulet had consumed five beers, she had “just picked a number,” on the assumption that “if he wasn’t falling down drunk that it wouldn’t be an extreme amount.”

Although not directly relevant here, the statute also provides claims for death from a defective way and from an employer’s negligence. See G.L.c. 229, §81, 2B (2000).

The plaintiff cites two Superior Court cases in which wrongful death claims were apparently based in part on an alleged breach of the warranty of habitability. See Mitchell-Gionet v. Markowski, 3 Mass. L. Rptr. No. 3, 45 (Jan. 16, 1995) (Toomey, J.) (denying Rule 12(b)(6) motion to dismiss breach of warranty of habitability claim because warranty might run to non-tenant), and Judge Doerfer’s jury instructions in Paradis v. Congress Management Co. Ltd. Partnership, Civil Action No. 922053G (4 Mass. L. Rptr. 11). Neither case purports to address the legal issue raised by defendants here.